AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information Associated with Target Telephones 1, 4, and<br>7, More Fully Described in Attachments A1 and A2 | )<br>)<br>)<br>)<br>)<br>) |

Case No.   MJ22-226

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with Target Telephone 1, more fully described in Attachment A1, and Target Telephones 4 and 7, more fully described in Attachment A2, incorporated herein by reference.

located in the ___Southern___ District of ___Florida; New Jersey___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B1 and B2, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing in and Harboring Certain Aliens, and Conspiracy to Commit Such |
| 18 U.S.C. §1956(a)(1), (h) | Offenses; Laundering of, and Conspiracy to Launder, Monetary Instruments |

The application is based on these facts:

✓ See Affidavit of Special Agent David J. Spitzer, attached hereto and incorporatated herein by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

DAVID J. SPITZER, Special Agent, HSI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: ___May 20, 2022___

*Judge's signature*

City and state: ___Seattle, Washington___

HON. BRIAN A. TSUCHIDA, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

STATE OF WASHINGTON          )
                             )          ss
COUNTY OF KING               )

I, David Spitzer being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with United States Homeland Security Investigations (HSI) and have been so employed since January 2020. In February 2021, I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Centers (FLETC) in Glynco, Georgia. While at FLETC, I received nearly 1000 hours of training in such areas including, but not limited to criminal law, human smuggling/trafficking investigations, and criminal procedures. Prior to being employed with HSI, I was employed as an agent with the United States Border Patrol (USBP) for eleven years and was assigned to the Sector Intelligence Units in El Centro, CA, and Blaine, WA. In this capacity, I was responsible for conducting criminal investigations regarding the violation of immigration laws of the United States. In 2009, I graduated from the United States Border Patrol Academy at the FLETC in Artesia, New Mexico. My education includes a Bachelor of Arts degree in Political Science and a Bachelor of Arts degree in Criminology from the University of Florida.

2.      I am assigned to HSI's National Security and Public Safety group in Blaine, WA (hereinafter "HSI Blaine"), which focuses on the enforcement of immigration laws (Title 8, United States Code), including human trafficking and human smuggling, as well as the investigation of transnational gangs. I am authorized to investigate and enforce violations of federal criminal statutes, including those in Titles 8, 18, and 21 of the United States Code.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 1

3.      I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephone(s) (hereinafter, the "Target Telephone(s)"):

a.      (916) 616-2319 (hereinafter "Target Telephone 1" or "TT1"). TT1 is a cellular telephone with International Mobile Subscriber Identity (IMSI) 311480380560254, with subscriber "Info Update," at 295 Parkshore Drive, Folsom, CA, with service provided by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. TT1 is described herein and in Attachment A1, and the location information to be seized is described herein and in Attachment B1.

b.      (253) 750-1721 (hereinafter "Target Telephone 4" or "TT4"). TT4 is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410206907647, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 98022, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. TT4 is described herein and in Attachment A2, and the location information to be seized is described herein and in Attachment B2.

c.      (360) 778-9649 (hereinafter "Target Telephone 7" or "TT7"). TT7 is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410370678979, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 98409, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. TT7 is described herein and in Attachment A2, and the location information to be seized is described herein and in Attachment B2.

4.      This is the fourth application in this judicial district for a search warrant authorizing disclosure of the above information for Target Telephone 1. This is the second application in this judicial district for a search warrant authorizing disclosure of the above

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information for Target Telephone 4. This is the first application in this judicial district for a search warrant authorizing disclosure of the above information for Target Telephone 7 in connection with this investigation.

5.     The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 8 U.S.C. §§ 1324(a)(1)(A)(i)-(iii), (v)(I) and (a)(2)(B)(ii), Bringing in and Harboring Certain Aliens,[1] and Conspiracy to commit such offenses, and 18 U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary Instruments (hereinafter referred to collectively as "Target Offenses"), have been committed, are being committed, and will be committed by Rajinder Pal SINGH, aka Jaspal GILL,[2] and other known and unknown. There is also probable cause to believe that the location information described in Attachments B1-B2 will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## ECPA

7.     The Court has jurisdiction to issue the proposed warrants under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a

---

[1] The word "alien" is used in Title 8 of the United States Code. Throughout this affidavit, and consistent with Executive Branch policy, when referencing offenses as defined in Title 8 of the United States Code, the author uses the term "alien," when not referring specifically to Title 8 of the United States Code, the term "noncitizen" is used in lieu of the term "alien."

[2] To avoid confusion due to other individuals listed in this affidavit with the last name SINGH, in this affidavit, Rajinder Pal SINGH—the main target of this investigation—will be referred to by his alias Jaspal GILL.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is
2  the Western District of Washington, a district court of the United States that has jurisdiction
3  over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

4        8.      **Through this application, the United States does not request and does**
5  **not seek to obtain the contents of any communications, as defined in 18 U.S.C.**
6  **§ 2510(8).**

7            **BACKGROUND ON UNDOCUMENTED NONCITIZEN SMUGGLING**
8                                  **ORGANIZATIONS**

9        9.      I know from training and experience that 8 U.S.C. § 1324(a)(1)(A)(i) makes
10  it illegal to bring, or attempt to bring, an alien to the United States in any matter whatsoever
11  other than at a designated port of entry or a place other than as designated by the Secretary
12  of the Department of Homeland Security. I also know that this section applies regardless
13  of whether an undocumented noncitizen has received prior official authorization to come
14  to, enter, or reside in the United States.

15        10.     I also know that under 8 U.S.C. § 1324(a)(1)(A)(ii) it is illegal to knowingly
16  or in reckless disregard of the fact that an alien has come to, entered, or remains in
17  the United States in violation of law, to transport, or attempt to transport, such alien in
18  order to help the alien remain in the United States illegally.

19        11.     In addition, I know that under 8 U.S.C. § 1324(a)(1)(A)(iii) it is illegal to
20  knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains
21  in the United States in violation of law, to harbor, or attempt to harbor, such alien, with the
22  intent to violate the law.

23        12.     I further know that under 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (II) it is unlawful
24  to conspire to commit, or aid or abet the commission of the crimes listed in 8 U.S.C. §§
25  1324(a)(1)(A)(i)-(iii).

26        13.     Finally, I know that under 8 U.S.C. § 1324(a)(2)(B)(ii) it is illegal to
27  knowingly or in reckless disregard of the fact that an undocumented noncitizen has not

28

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   received prior official authorization to come to, enter, or reside in the United States, bring
2   or attempt to bring to the United States whatsoever, such alien for private financial gain.

3         14.   From my training and experience as an HSI Special Agent, I know that
4   undocumented noncitizens who cannot secure non-immigrant or immigrant visas to
5   lawfully enter the United States generally choose instead to enter the United States illegally
6   between the ports of entry on the southern and northern borders.

7         15.   Because of their general unfamiliarity with the terrain and border
8   environment or with the methods and routes used to successfully cross the border without
9   detection by government officials, undocumented noncitizens seeking to enter the United
10  States without inspection frequently hire individuals, known as smugglers, who have
11  experience bringing individuals into the United States without detection.

12        16.   Several undocumented noncitizen smuggling organizations operate in the
13  lower mainland of British Columbia, Canada. These organizations typically charge
14  undocumented noncitizens between $2,000 and $5,000 (USD) to be illegally brought
15  across the U.S. border. Fees charged by these organizations vary on different factors. This
16  can include if an undocumented noncitizen is housed by the organization during their
17  illegal border crossing, or if the organization transports the undocumented noncitizen a
18  significant distance during the illegal entry. The relative risk of the route used to enter the
19  U.S. is also a factor that can affect the fee.

20        17.   Undocumented noncitizen smuggling organizations operating in the lower
21  mainland of British Columbia typically have U.S. associates who pick up the
22  undocumented noncitizens once they cross the border illegally. These U.S. associates
23  typically transport the undocumented noncitizens to the Seattle area, where associates may
24  then assist the undocumented noncitizens with travel arrangements to other U.S. locations.
25  These undocumented noncitizen smuggling organizations may assist in facilitating a driver
26  to transport undocumented noncitizens to other states, as many illegal entrants lack the
27  identification required to travel by air or other mass transportation.

28

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 5

18.     Many of these undocumented noncitizen smuggling organizations work with individuals known as "brokers", who arrange travel for the undocumented noncitizens from their home countries through various transit nations into the U.S. for fees ranging from $30,000 to $70,000 (USD). These brokers will often also arrange for fraudulent travel and identification documents to facilitate the undocumented noncitizen's travel.

## SUMMARY OF THE INVESTIGATION

19.     In 2018, Homeland Security Investigations (HSI) Blaine began investigating a non-citizen smuggling organization that was suspected of smuggling non-citizens into the United States through the U.S. – Canada border in Whatcom County, Washington. Through the course of this investigation, investigators have determined that beginning no later than Summer 2018, the smuggling organization has used, and continues to use, Uber drivers to transport undocumented noncitizens from the U.S. – Canada border to various locations in the greater Seattle area.

20.     Based upon records provided by Uber, investigators observed a pattern associated with the Uber trips involving the transportation of non-citizens that were being smuggled by the organization. Specifically, investigators noted that the Uber trips would consist of two legs. The first leg of the trip would originate from near the U.S. – Canada border and would terminate at an intermediate location—most often the Seattle-Tacoma International Airport. The second leg would then commence from the vicinity of the prior drop-off location and would terminate near a suspected stash house in Kent, WA, at a strip mall parking lot in Lacey, WA, or at motels in the greater Seattle-area.

21.     Of note, Daljit KAUR—GILL's spouse—is the owner of a property located at 2743 Fiddleback St. NE, Lacey, WA, (hereinafter, "the Lacey Residence") that investigators believe GILL has used as a location to house smuggled non-citizens prior to further transportation throughout the United States. Specifically, in July 2021, August 2021, and September 2021, via video and/or in-person surveillance, GILL was observed dropping off suspected smuggled non-citizens at a gas station in Lacey, WA (July 2021),

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  or picking-up suspected smuggled non-citizens and transporting them back to the Lacey
2  Residence (August and September 2021).

3      22.    Moreover, in the days prior to the July 2021 suspected smuggling event,
4  investigators located multiple split Uber trips—that originated near the U.S. – Canada
5  border and terminated in Lacey, WA. For the suspected smuggling events in August and
6  September 2021, investigators conducted surveillance of the Uber trips while in progress.

7      23.    In the past several months, investigators have advanced this investigation by
8  obtaining additional process from Uber, credit card records from Capital One, and GPS
9  ping warrants for the digital devices/call numbers associated with the Uber accounts being
10  used by the smuggling organization.

11      24.    Of note, records from Capital One show that a credit card in the name of
12  "Jaipaul Singh,"[3] with a billing address of 10074 Dona Neely Way, Elk Grove, CA, and
13  owned by Daljit KAUR (hereinafter "the Elk Grove Residence"), purchased airfare for
14  individuals that GILL smuggled into the United States in January 2022. The airfare
15  purchased was for K.P. (Seattle to Nashville) on January 25, 2022, and J.C. (Seattle to
16  Chicago) on January 26, 2022.

17      25.    Investigators located split Uber trips on both January 25, 2022, and January
18  26, 2022, that appear to correlate with these flights. Specifically, the first leg of each trip
19  originated in the early morning hours near the U.S. – Canada border and was split at the
20  Seattle-Tacoma International Airport (hereinafter "Sea-Tac Airport"). After the trip was
21  split a Sea-Tac Airport, the second leg of the trip continued to the Century Motel in Kent,
22  WA. Later in the same day, investigators then noted an apparent third leg of the trip from
23  the Century Motel back to the Sea-Tac airport.

24

25

26  [3] Investigators believe this name to be an alias of GILL. A Bank of America (BoA) account
   previously identified during this investigation also used the name of Jaipaul Singh. This bank
27  account, which was closed in October 2021, had an associated phone number of TT1 and an
   address of the Galt Residence. This BoA account was used to pay 10 of the 114 payments during
28  the requested period on the Capital One credit card.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

26.     Based upon recorded communications between GILL and an HSI cooperating source (referred to in prior applications and herein as "CS-2"[4]), investigators confirmed that GILL smuggled K.P. and J.C. into the United States as indicated above. According to these recorded communications, GILL's fee for smuggling these two individuals into the United States was $11,000 per person / $22,000 total.

27.     Throughout April 2022, investigators conducted joint operations with other DHS components near the U.S. – Canada border in the Western District of Washington. Specifically, on April 21, April 26, and April 27, 2022, U.S. Border Patrol agents apprehended ten Indian nationals shortly after they had illegally entered the United States from Canada. Based upon the review of Uber records, GPS ping information, PR/TT data, and surveillance video at a Walgreens in Elk Grove, CA—and as further explained herein—investigators linked each of these smuggling events to GILL. Moreover, based upon GPS location information, investigators believe that GILL conducted each of these smuggling events from the Elk Grove Residence.

---

[4] CS-2 has been an HSI source of information, and later a confidential informant, since Summer 2021. CS-2 was previously identified as a target of this investigation and some of his/her activities in support of the smuggling organization are detailed in this affidavit. CS-2 is cooperating with the government in the hope of receiving prosecutorial consideration. CS-2 has a criminal history related to his/her unlawful entry into the United States. CS-2 is subject to an outstanding order of removal issued by an immigration judge, *in absentia*, under a different and false name that CS-2 had provided to USBP upon his initial apprehension in 2003. Due to his/her cooperation in this investigation, CS-2 was receiving deferred action from HSI. In March 2022, CS-2 was granted an immigration benefit that could ultimately lead to lasting status and relates to an application that was submitted prior to CS-2's involvement with HSI and this investigation. However, his/her prior participation in the smuggling organization's activities could detrimentally affect CS-2's ability to receive a lasting immigration benefit.

CS-2 has not previously been a confidential informant with HSI or any other law enforcement agency. During the time that CS-2 has been cooperating with HSI in this investigation, CS-2 has provided actionable information related to the smuggling organization's activity, which has resulted in several arrests of undocumented noncitizens subsequent to their unlawful entry into the United States. Based on these arrests, and other background information related to subjects of investigation—some of which, but not all of which agents have been able to externally corroborate—the information provided by CS-2 has been shown to be reliable.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

28.     Furthermore, in the month of April 2022, investigators observed—via remote video surveillance—two separate groups of suspected noncitizens entering the garage of the Lacey Residence owned by Daljit KAUR. For each of these suspected smuggling events, investigators were able to locate a split Uber trip that originated at the border and terminated within .2 miles of the Lacey Residence. For each of these two suspected smuggling events in April 2022, GPS location data placed GILL at the Elk Grove Residence at the time of these events.

## **PROBABLE CAUSE**

A.     **Identification of Smuggling Organization and Target of Investigation Rajinder Pal SINGH, aka Jaspal GILL**

29.     In 2018, Homeland Security Investigations (HSI) Sacramento received information from Amtrak Investigations regarding suspicious activity related to an Amtrak member profile that was set up using the email account, singhmola7@gmail.com (hereinafter referred to as "Amtrak Account"). HSI learned that user behind that Amtrak Account had spent more than $90,000 to purchase tickets for groups of Indian nationals traveling mostly from Washington State to Naperville, IL, a suburb of Chicago. These tickets were purchased using billing names that included Jaypaul SINGH and Jaspal GILL with multiple billing addresses, including 11810 127th Street East in Puyallup, WA.

30.     As indicated above, Jaspal GILL is a known alias of Rajinder Pal SINGH. A search of Washington state records revealed a driver license in the name of Jaspal GILL (GILL*J*227LE) and an address of 11810 127th Street Ct E in Puyallup, WA. This license was first issued on April 27, 2012, reissued on November 21, 2015, but according to Washington State records was subsequently cancelled. The two driver's license photos associated with this driver's license appear to be a match to GILL—based both on other photographs that I have viewed of GILL and physical surveillance that I have conducted of GILL.

31.     Another name associated with the Amtrak Account was Daljit KAUR, with a corresponding billing address of 9989 Springview Way, Elk Grove, CA. Based upon

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reports authored by other law enforcement officers relating to this case, I know that this is a name and address match to the common law[5] spouse of GILL.

32.     On January 17, 2018, Amtrak investigators notified U.S. Immigration and Customs Enforcement (ICE) and the Naperville Police Department of a train that was set to arrive that day in Naperville, IL, with many passengers whose tickets had been booked by the Amtrak Account. Upon arriving, a group of approximately ten individuals, who appeared to be on Indian descent, were observed disembarking from the train. These individuals were traveling with either no personal belongings or, at most, a backpack.

33.     After the group split up, a Naperville Police Department officer initiated a traffic stop on a vehicle in which one of the suspected undocumented noncitizens was an occupant. The passenger, a female named V.P., refused to answer questions of officers related to her immigration status and was later released from the scene. Further record checks were conducted by HSI SA Dylan Critten that revealed that V.P. was previously refused a United States visitor visa and there was no record of her having been lawfully admitted into the United States.

34.     According to Amtrak records, the bookings associated to the Amtrak Account used Internet Protocol (IP) address 73.221.131.24, as well as other IP addresses. On February 9, 2018, SA Critten served Comcast Communications with an administrative subpoena for records pertaining to IP address 73.221.131.24.

35.     On February 20, 2018, Comcast responded to the subpoena. According to the records provided, between January 1, 2018, and February 9, 2018, the subscriber of record for the requested IP address was Jaspaul GILL with a service address of 623 Eastside St. SE, Apt. 404, Olympia, WA.

---

[5] I use this term because I am not certain that GILL and KAUR are in fact married, under either Indian or U.S. law. However, based upon my investigation in this case, to include law enforcement reports from 2003 and 2008, I know that GILL and KAUR are the parents of at least two children and have shared the same household.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

36.     On March 26, 2018, a public-records search by SA Critten for the address located at 623 Eastside St. SE, Apt. 404 in Olympia, WA, returned results for both "Jaypaul SINGH" and "Jaspaul GILL."

37.     While conducting a criminal record search on GILL, it was determined that on August 1, 2003, in the District of Oregon, GILL was convicted of 18 U.S.C. § 1540 (False Statements in Application for U.S. Passport) and 18 U.S.C. § 1344 (Bank Fraud), sentenced to twenty-one months in prison, and ordered to pay restitution of more than $290,000. On July 13, 2009, in the Western District of Washington, GILL was convicted of 8 U.S.C. § 1326(b)(2) (Illegal Reentry After Deportation) and 18 U.S.C. § 1344 (Bank Fraud), sentenced to twenty-seven months in prison, and ordered to pay restitution of approximately $15,000. On January 3, 2011, following service of his sentence on the above charges, GILL was deported from the United States and returned to India.

38.     According to records provided to law enforcement by Chase, a checking account in the name of Jaspal GILL, with an address of 11810 127th Street Ct E, Puyallup, WA, was opened in Federal Way, WA, on January 4, 2012.

39.     On September 18, 2018, an Amtrak representative confirmed to SA Critten that there had been no more reservations purchased using the singhmola7@gmail.com email address after January 16, 2018.

40.     On April 4, 2019, through a search of the Thurston County Assessors website, HSI SA Jason Montgomery learned that Daljit KAUR had purchased 2743 Fiddleback St. NE, Lacey, WA, *i.e.*, the Lacey Residence, in February 2019. Additionally, based upon additional open-source checks, SA Montgomery found a utility record under the name Jaspaul GILL for the Lacey Residence. The phone number listed on that utility record was (916) 616-2319, *i.e.*, the call number associated with TT1.

41.     According to records provided by Verizon on January 27, 2022, TT1 is a prepaid account with a subscriber listed as "Info Update" and an address of 295 Parkshore Drive, Folsom, CA. An open-source search of that address reveals that it is a Verizon office

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  building. The subpoenaed information also revealed that TT1 has been active with the same

2  subscriber since January 28, 2018.

3      **B.**    **Identification of Smuggling Organization's Use of Uber to Transport**

4            **Undocumented Noncitizens from U.S. – Canada Border**

5      42.    In July 2018, independent of the above-noted HSI Sacramento investigation

6  relating to purchase of train fares by the Amtrak Account, HSI Blaine initiated an

7  investigation into the increased apprehensions by USBP of foreign nationals crossing

8  illegally into the United States from Canada between the designated ports of entry in

9  Whatcom County, WA.

10      43.    Information obtained through the investigation indicates that beginning no

11  later than Summer 2018, GILL and the smuggling organization began using Uber drivers

12  to transport undocumented noncitizens from the U.S. – Canada border to various locations

13  in the greater Seattle area.

14      44.    On October 4, 2018, Border Patrol agents observed a dark gray[6] 2015 Toyota

15  Camry with Washington license plate BGB5468 (hereinafter "the Camry") pick up four

16  individuals who had crossed into the United States illegally near Lynden, WA.

17      45.    Border Patrol agents stopped the Camry and interviewed the driver,

18  Ramandeep Singh Johal. Johal stated that he was an Uber driver and said that he was at

19  home when he received an alert on his Uber application for a fare. Johal told Border Patrol

20  agents that this was the first time he had picked up a fare that close to the border. Johal said

21  that after the Border Patrol stopped the Camry, the man in the Camry's passenger seat told

22  Johal that the group had crossed the border illegally.

23      46.    U.S. Border Patrol agents also interviewed the four passengers inside the

24  Camry, and determined these individuals were Indian citizens and did not have the required

25  immigration documents to be in the United States legally.

26

27  ─────────────

28  [6] Prior warrant applications described this vehicle as black, but upon further visual surveillance, its color is more appropriately described as dark gray.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 12

47.     Uber records, received in October 2018, show that Johal and the Camry made more than a dozen early-morning trips from addresses in Lynden and Nooksack, WA, to Sea-Tac Airport between late September 2018 and early December 2018. These trips occurred between 1:53 a.m. and 5:23 a.m.

48.     On November 16, 2018, U.S. Magistrate Judge Paula L. McCandlis authorized the government to install a GPS tracking device on the Camry. GJ18-603 (W.D. Wash. Nov. 16, 2018). Agents installed a tracker on the Camry on November 19, 2018.

49.     On December 3, 2018, at 2:05 a.m., HSI Blaine conducted electronic surveillance of the Camry as it left 1861 Emerald Lane, Lynden, WA. According to the court-authorized GPS tracker, at 2:10 a.m., the Camry stopped briefly on Berthusen Road in Lynden, WA, approximately four miles south of the U.S. – Canada border. HSI Blaine continued electronic surveillance of the Camry as it traveled directly to Sea-Tac Airport, roughly 115 miles from Lynden.

50.     Once the Camry arrived at the airport, Supervisory Special Agent (SSA) Loic Gunn observed four occupants—two men of apparent Indian descent, one woman of apparent Indian descent, and a young child—get out of the vehicle near the American Airlines departure drop-off area.

51.     SSA Gunn maintained surveillance on foot as these four individuals left the drop-off area and walked downstairs to the arrival's concourse. The individuals then walked away from the airport to Pacific Highway South.

52.     SA Brian Faria then observed these four individuals cross Pacific Highway South to the parking lot of the Radisson Hotel Seattle Airport (hereinafter "Radisson Sea-Tac"), where they were picked up by a silver 2017 Toyota Prius bearing Washington license plate number BFG8375 (hereinafter "the Prius"), registered to Ajeet Singh, at 11221 SE 240th Place, Kent, WA[7] (hereinafter "the Kent Residence"). Based on

---

[7] Based on surveillance and information gathered throughout this investigation, investigators believe this address used to be a stash house for undocumented noncitizens who were smuggled

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  subsequent physical surveillance and a review of identity documents, law enforcement

2  believes that the driver of the Prius was in fact Ajeet Singh.

3      53.    HSI Blaine and Seattle agents continued surveillance of the Prius as it drove

4  to the Econo Lodge hotel at 1233 Central Ave., Kent, WA, arriving at 4:36 a.m. Once at

5  the Econo Lodge, the occupants of the Prius, including Singh, entered Room 108. Five

6  minutes later, Singh left Room 108 by himself and departed the hotel in the Prius.

7      54.    Singh returned to the hotel in the Prius around noon. Agents watched him

8  enter Room 108 with a small plastic grocery bag. Five minutes later, Singh left the room

9  and entered the hotel lobby. Singh returned to Room 108 before departing in the Prius at

10  12:15 p.m.

11      55.    At 10:18 p.m., agents observed Singh return to the hotel in the Prius. A few

12  minutes later, the four occupants—two men, a woman, and a child—left the room and got

13  into the Prius. Singh parked near the lobby and went inside for several minutes before

14  exiting the lobby with papers in his hand. Singh reentered the Prius and drove the

15  passengers to the Kent Residence without stopping. Agents saw the Prius enter the

16  residence's attached garage.

17      56.    A review of records provided by Uber, shows that the Malik Sen was the

18  Uber customer who ordered the December 3, 2018, Uber trip detailed above. A further

19  analysis of records provided by Uber show that from September 28, 2018, through

20  December 31, 2018, the Malik Sen Uber Account booked twenty-four additional trips from

21  Lynden and Nooksack, WA, to Sea-Tac Airport. Significantly, the last trip on December

22  31, 2018, with a pick-up in Lynden, WA, and a planned destination of Sea-Tac Airport,

23  resulted in the apprehension of five undocumented citizens by USBP in Bellingham, WA.

24

25

26  _____

27  into the United States prior to being transported by the smuggling organization to various locations
throughout the United States. However, since early 2020, the investigation has revealed that the

28  organization no longer uses this location.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.    Identification of Straw Uber Accounts and Uber Trip-Splitting as Means of Obfuscating Trip Origin**

57.    Throughout the course of this investigation, HSI has identified at least seventeen Uber accounts used by the smuggling organization. Through various legal processes, Uber has provided phone numbers associated with each of these Uber accounts. HSI has been able to determine, through subpoena requests to various service providers, that the phone number associated with each of these seventeen Uber accounts has service via a prepaid wireless account.[8]

58.    Though investigators have identified seventeen Uber accounts that are believed to have been used by the organization since the inception of the investigation in 2018, according to records provided by Uber through May 5, 2022,[9] investigators believe that many of these accounts are no longer in use by the organization. However, at least four of these Uber accounts were active through at least April 25, 2022. These four accounts are:

| Uber Account Name | Phone Number Associated with Account |
|---|---|
| Sam Thakur / Uber Account 1 | 916-616-2319 / TT1 |
| Dave Maer / Uber Account 2 | 360-303-0806 / TT2 |
| Dhiren Paras / Uber Account 3 | 916-513-3602 / TT3 |
| Avr Suri / Uber Account 5 | 628-224-5202 / TT5 |

**Sam Thakur / Uber Account 1**

59.    According to records provided by Uber on May 5, 2022, an account with the

//

//

---

[8] Based on my training and experience, I know that use of prepaid wireless cellular accounts is a common tactic used by criminals who are attempting to evade law enforcement detection, as these accounts typically would not require verifiable subscriber/account holder information such as name and/or address.

[9] MJ22-189 (W.D. Wash. May 2, 2022).

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   user-name Sam Thakur (Uber Account 1)[10] was created on February 4, 2018, and was

2   active as of the date that Uber provided the records. As of the date of the return, the digital

3   device associated with Uber Account 1 was an Apple iPhone 11[11] with service by Verizon.

4   The billing information was listed as "gift card." The e-mail address listed on the account

5   was thakurpur360@gmail.com.

6       60.     As detailed below, a review of Uber Account 1 suggests that Uber Account

7   1 has been used in conjunction with other Uber Accounts to move suspected undocumented

8   noncitizens from near the U.S. – Canada border to Sea-Tac Airport, and then to the Kent

9   residence, the Lacey Residence, and other areas known and unknown.

10      61.     While Uber Account 1 has never been used to order an Uber trip originating

11  near the U.S. – Canada border, it has been used repeatedly as a second leg of an Uber trip

12  that originated near the U.S. – Canada border. Specifically, from September 16, 2018, to

13  May 29, 2021, at least ninety of the 140 Uber trips ordered by Uber Account 1 originated

14  at, or near, Sea-Tac Airport, and were ordered within thirty minutes of the termination of

15  another Uber Trip—ordered by a different Uber account—that ended at, or near, Sea-Tac

16

17

---

18  [10] In April 2020, Uber provided internet protocol (IP) addresses relating to four Uber accounts,

19  including Uber Account 1. One of the IP addresses provided, relating to Uber Account 1, was
    73.83.98.37 (hereinafter "IP Address 1"). According to these records, IP Address 1 registered with

20  Uber servers twenty-two times from January 9, 2020 (UTC), through February 11, 2020 (UTC).
    According to Comcast records, during these dates, IP Address 1 was associated with service at the

21  Lacey Residence, with GILL as the subscriber.

22  Another IP address associated with Uber Account 1 was 98.255.185.2 (hereinafter "IP Address
    2"). According to Uber records, IP Address 2 registered with Uber servers 324 times from January

23  2, 2020 (UTC), through March 31, 2020 (UTC). According to Comcast records, during these dates,
    IP Address 2 was associated with service at the Elk Grove Residence with Daljit KAUR as the

24  subscriber.

25  In September 2021, Uber provided additional records relating to IP addresses associated with Uber
    Account 1. According to these records, IP Address 1 again registered with Uber servers on

26  September 8, 2021 (UTC). According to Comcast records received, on September 8, 2021, IP

27  Address 1 was still associated with service at the Lacey Residence, with GILL as the subscriber.

    [11] According to Uber records, the device model shows "iPhone 12,1." Based on an open-source

28  search, this nomenclature refers to an iPhone 11.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Airport. As noted, each of these apparent first legs of a split-trip originated near the U.S. – Canada border.

62.     The below chart showing trip-splitting[12] at Sea-Tac Airport—with the Sam Thakur/Uber Account 1 always being the second leg—is representative of these ninety trips involving the two separate Uber accounts with trip-splitting at Sea-Tac Airport. Moreover, from January 27, 2020, through April 22, 2022, when Uber Account 1 has been used in conjunction with another Uber account to split a trip at or near Sea-Tac Airport, the first leg of the trip was always ordered by either the Dave Maer Account / Uber Account 2 or the Dhiren Paras Account / Uber Account 3.

|        | Date      | Departure | Origin            | Arrival   | Destination                     | Uber Account                   |
|--------|-----------|-----------|-------------------|-----------|---------------------------------|--------------------------------|
| Leg 1  | 9/16/2018 | 4:36 a.m. | Lynden, WA        | 6:36 a.m. | Sea-Tac Airport                 | Nile Bijj                      |
| Leg 2  | 9/16/2018 | 6:57 a.m. | Radisson Sea-Tac  | 7:15 a.m. | 9620 S. 242nd Ct., Kent, WA[13] | Sam Thakur / Uber Account 1    |
| Leg 1  | 1/31/2019 | 4:32 a.m. | Nooksack, WA      | 6:34 a.m. | Sea-Tac Airport                 | Dev Sumer                      |
| Leg 2  | 1/31/2019 | 6:50 a.m. | Radisson Sea-Tac  | 7:14 a.m. | 11222 SE 240th Pl., Kent, WA[14]| Sam Thakur / Uber Account 1    |

---

[12] Based on records provided by Uber, law enforcement's knowledge of this investigation, and the patterns identified herein, investigators believe that members of the organization are splitting trips to obscure the origin of the trip, *i.e.*, the international border, and to provide a potential lack of knowledge defense relating to the immigration status and/or manner of entry of the noncitizens that the organization is smuggling.

[13] This address is located approximately 1.2 miles from the Kent Residence discussed above in Section B.

[14] This address is located two houses away from the Kent Residence discussed above in Section B.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | | | | |
|---|---|---|---|---|---|---|
| Leg 1 | 4/11/2019 | 5:28 a.m. | Lynden, WA | 7:50 a.m. | Sea-Tac Airport | Avr Suri / Uber Account 5 |
| Leg 2 | 4/11/2019 | 8:05 a.m. | Radisson Sea-Tac | 8:27 a.m. | 10715 SE 240th St., Kent WA[15] | Sam Thakur/ Uber Account 1 |
| Leg 1 | 1/6/2020 | 2:19 a.m. | Custer, WA | 4:09 a.m. | Sea-Tac Airport | Dave Maer/ Uber Account 2 |
| Leg 2 | 1/6/2020 | 4:28 a.m. | Radisson Sea-Tac | 4:46 a.m. | 11211 SE 240th Pl., Kent WA[16] | Sam Thakur/ Uber Account 1 |
| Leg 1 | 1/19/2021 | 5:27 a.m. | Ferndale, WA | 8:04 a.m. | Radisson Sea-Tac | Dave Maer / Uber Account 2 |
| Leg 2 | 1/19/2021 | 8:09 a.m. | Radisson Sea-Tac | 9:11 a.m. | Starbucks Lacey, WA[17] | Sam Thakur/ Uber Account 1 |
| Leg 1 | 5/29/2021 | 3:38 a.m. | Ferndale, WA | 5:31 a.m. | Radisson Sea-Tac | Dhiren Paras/Uber Account 3 |
| Leg 2 | 5/29/2021 | 5:39 a.m. | Radisson Sea-Tac | 6:25 a.m. | 2719 Fiddelback St, NE, Lacey, WA[18] | Sam Thakur/Uber Account 1 |

---

[15] This address is located approximately .4 miles from the Kent Residence discussed above in Section B.

[16] This address is located across the street from the Kent Residence discussed above in Section B

[17] The drop-off location for this trip is located approximately 2.1 miles from the Lacey Residence discussed above in Sections A and C.

[18] This address is located 180 feet from the Lacey Residence—owned by Daljit KAUR.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

63.     As indicated above, records provided by Verizon on January 27, 2022, show that the phone number associated to Uber Account 1 is a prepaid account with a subscriber listed as "Info Update" and an address of 295 Parkshore Drive, Folsom, CA. An open-source search of that address reveals that it is a Verizon office building. These records also show that the phone number associated to Uber Account 1—(916) 616-2319, *i.e.*, TT1—has been active, with the same subscriber information associated to it, since January 28, 2018.

**Dave Maer / Uber Account 2**

64.     According to records provided by Uber on May 5, 2022, Uber Account 2 was created on September 27, 2018, in the name of "Vimal Shah." The account name was changed to "Dave Shah" on January 2, 2019. Less than a minute later, on January 2, 2019, the account name was again changed to "Dave Maer." As of the date of the return, the digital device associated with Uber Account 2 was an Apple iPhone 6[19] with service by Verizon. The billing information listed a partial account number associated with a "RuPay" (Indian) credit card. The e-mail address listed on the account was fivepal360@gmail.com. The account was active as of the date that Uber provided the records.

65.     According to Uber records obtained in February 2022, Uber Account 2 ordered approximately ninety-three Uber trips from January 3, 2019, through February 13, 2022. Significantly, beginning in May 2019, and continuing until October 18, 2021, Uber Account 2 has been used to order thirty-six fares that originated near the U.S. – Canada border and terminated at the Sea-Tac Airport, the Radisson Sea-Tac, or other locations adjacent to Sea-Tac Airport.

66.     Moreover, on January 26, 2022, Uber Account 2 and Uber Account 3 were involved in an apparent split-trip that originated near the U.S. – Canada border and terminated at a hotel in Kent, WA. Specifically, Uber Account 3 ordered a trip that

---

[19] According to Uber records, the device model shows "iPhone 7,2." Based on an open-source search, this nomenclature refers to an iPhone 6.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  originated near Badger Road in Lynden, WA, at approximately 4:55 a.m. That trip
2  terminated at the Mariner Park and Ride in Everett, WA (hereinafter "Everett Park and
3  Ride"), at approximately 6:19 a.m. At approximately 6:28 a.m., a trip ordered by Uber
4  Account 2, originated at a Starbuck's in Everett, WA—that is 500 feet from the Everett
5  Park and Ride. This second leg, ordered by Uber Account 2, terminated at the Century
6  Motel in Kent, WA (hereinafter "Century Motel"), at 7:09 a.m.

7      67.     Additionally, beginning on February 9, 2021, and as recently as January 11,
8  2022, Uber Account 2 ordered sixteen trips that originated at the Radisson Sea-Tac. Each
9  of these sixteen trips terminated at one of three locations: a parking lot in Lacey, WA
10  (twelve trips), the Century Motel (two trips), or a Park and Ride in Kent, WA, that is located
11  approximately .2 miles from the Century Motel (two trips).

12      68.     Two of these sixteen trips, which occurred on August 30, 2021, and October
13  1, 2021, appear to be split trips from the area near the U.S. – Canada border, with both legs
14  of each trip being ordered by Uber Account 2. Moreover, even though investigators have
15  not yet located the first leg—from the border to Sea-Tac airport—for the other fourteen of
16  these sixteen trips, each of these fourteen trips originated at the Radisson Sea-Tac between
17  4:56 a.m. and 7:43 a.m., which is consistent with a first leg that originated near the U.S. –
18  Canada border in the early morning hours.

19      69.     Based upon Uber records through February 23, 2022, the last trip ordered by
20  Uber Account 2 occurred on February 13, 2022. This trip originated at the Century Motel
21  at 12:39 p.m., and terminated at Sea-Tac Airport at 12:52 p.m.

22      70.     According to records provided by Verizon on January 27, 2022, the phone
23  number associated with Uber Account 2 is a prepaid account with a subscriber listed as
24  "PHONEINTHEBOX OAS" and an address of 295 Parkshore Drive in Folsom, CA, *i.e.*,
25  the same address listed for the phone number associated with Uber Account 1. According
26  to Verizon records, the phone number associated to Uber Account 2—(360) 303-0806, *i.e.*,
27  TT2—has had the same subscriber since September 26, 2018.

28

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Dhiren Paras / Uber Account 3**

71.     According to records provided by Uber on May 5, 2022, Uber Account 3 was created on March 21, 2018, in the name of "Montik Vij." On May 28, 2021, the account name was changed three times in a period of approximately five minutes. The account name was first changed to "Dhiren vij," then it was changed to "Dhiren Patel," and finally, the account name was changed to "Dhiren Paras." Coincident with the name changes on May 28, 2021, a U.S. passport in the name of "Dhiren Patel" was uploaded as the identity document associated with the account. As of the date of the return, the digital device associated with Uber Account 3 was an Apple iPhone 7[20] with service by AT&T. The billing information was listed as "gift card." The e-mail address listed on the account was sooramaa@icloud.com. The account was active as of the date that Uber provided the records.

72.     Uber records obtained in February 2022 show that from May 29, 2021, through February 12, 2022, Uber Account 3 ordered a total of fifty trips. Of these fifty total Uber fares, twenty-four have involved trips that originated near the U.S. – Canada border and terminated at the Sea-Tac Airport, the Radisson Sea-Tac, or at a gas station located next to Sea-Tac Airport.

73.     One of the twenty-four border trips, which occurred on September 15, 2021, appears to have been in tandem with Uber Account 2. Specifically, the Uber Account 3 border trip terminated at Sea-Tac at 6:34 a.m., with Uber Account 2 ordering a trip that originated at the Radisson Sea-Tac at 6:53 a.m. The second leg of the trip, ordered by Uber Account 2, terminated at the Century Motel at 7:04 a.m.

74.     Another one of the twenty-four border trips, which occurred on September 7, 2021, involved trip-splitting with both legs of the trip being ordered by Uber Account 3. Specifically, the first leg of the trip began near the U.S. – Canada border at 5:01 a.m., and

---

[20] According to Uber records, the device model shows "iPhone 9,3." However, based on an open-source search, this nomenclature refers to an iPhone 7.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   ended at 7:24 a.m. at Sea-Tac Airport. The second leg of the trip originated at the Radisson

2   Sea-Tac at 7:44 a.m., and terminated at 8:29 a.m. at the Lacey, WA parking lot—referenced

3   above that is approximately 2.1 miles from the Lacey Residence.

4       75.    In addition to the September 7, 2021, trip noted above, Uber Account 3

5   ordered another ten trips that originated at the Radisson Sea-Tac. The first of these ten trips

6   occurred on July 15, 2021, and the last was on February 9, 2022. Each of these ten trips

7   terminated at either the Lacey, WA parking lot (five trips) or the Century Motel (five trips).

8       76.    Finally, Uber records show that from October 13, 2021, through January 26,

9   2022, Uber Account 3 was used to order nine Uber trips that originated near the U.S. –

10  Canada border and terminated at the Everett Park and Ride. Investigators have only been

11  able to identify the second leg of five of these trips, including one involving Uber Account

12  2 on January 26, 2022, as discussed above.

13      77.    Based upon Uber records through February 23, 2022, the last trip ordered by

14  Uber Account 3 occurred on February 12, 2022. This trip originated near the U.S. – Canada

15  border in Lynden, WA, at 4:06 a.m., and terminated at Sea-Tac Airport at 6:21 a.m.

16      78.    AT&T Wireless records show that the phone number associated to Uber

17  Account 3 is connected to a prepaid account with the subscriber information labeled as

18  "PREPAID CUSTOMER" with an address of 17330 Preston Road in Dallas, TX. An open-

19  source search of this address revealed an office park with one of the offices being registered

20  to AT&T Mobility LLC. Based on information provided by AT&T, the phone number

21  associated to Uber Account 3—(916) 513-3602, *i.e.*, TT3—has been assigned to the same

22  prepaid customer since January 22, 2019.

23  **Avr Suri / Uber Account 5**

24      79.    According to records provided by Uber on May 5, 2022, an account with the

25  user-name Avr Suri (Uber Account 5) was created on March 17, 2019, and was active as

26  of the date that Uber provided the records. As of the date of the return, the digital device

27

28

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

associated with Uber Account 5 was an Apple iPhone SE[21] with service by AT&T. The billing information listed included both a "gift card" and a partial account number associated with a Chase Bank USA credit card. The e-mail address listed on the account was sooramaa@icloud.com.

80.     Uber records obtained in February 2022 show that from March 18, 2019, through February 9, 2022, Uber Account 5 ordered a total of seventeen trips. Of these seventeen total Uber fares, eight have involved trips that originated near the U.S. – Canada border and five of those terminated at the Sea-Tac Airport.

81.     One of the eight border trips, which occurred on February 2, 2022, appears to have been in tandem with Uber Account 3. Specifically, the Uber Account 5 border trip terminated at Sea-Tac at 3:21 a.m., with Uber Account 3 ordering a trip that originated at the Radisson Sea-Tac at 3:43 a.m. The second leg of the trip, ordered by Uber Account 3, terminated at the Century Motel at 3:52 a.m.

82.     Another one of the eight border trips, which occurred on January 25, 2022, involved trip-splitting with both legs of the trip being ordered by Uber Account 5. Specifically, the first leg of the trip began near the U.S. – Canada border at 3:18 a.m. and ended at 5:05 a.m. at Sea-Tac Airport. The second leg of the trip originated at the Radisson Sea-Tac at 5:24 a.m. and terminated at 5:35 a.m. at the Century Motel.

83.     AT&T Wireless records show that the phone number associated to Uber Account 5 is connected to a prepaid account with the subscriber information labeled as "PREPAID CUSTOMER" with an address of 123 Your Street, Your Town, GA. Based on information provided by AT&T, the phone number associated to Uber Account 5—(628) 224-5202, *i.e.*, TT5—has been assigned to the same prepaid customer since October 20, 2021.

---

[21] According to Uber records, the device model shows "iPhone 8,4." Based on an open-source search, this nomenclature refers to an iPhone SE.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

84.    In short, based upon the records reviewed relating to Uber Accounts 1-3 and 5, common origins/destinations among those accounts, and the patterns observed—to include trip-splitting as detailed above, investigators believe that all four accounts have been used predominantly, if not exclusively, by the smuggling organization to transport noncitizens from the area near the U.S. – Canada border, to intermediate locations (including Sea-Tac Airport and the Everett Park and Ride), and then to locations where the noncitizens are staged (the Kent Residence, the Lacey Residence, and Century Motel) before further transportation by the smuggling organization.

**D.    Review of Surveillance Video of July 24, 2021, Smuggling Event Involving GILL**

85.    In July 2021, investigators interviewed a target of this investigation. During that interview, the target acknowledged that he/she had recently engaged in activities on behalf of the smuggling organization. Based upon information provided by this individual, identifying a specific smuggling event that occurred on July 24, 2021, HSI SAs David Leon and Laura Marroquin obtained video footage from a Shell gas station, located at 4542 Martin Way E., Olympia, WA.

86.    During their review of the surveillance video, investigators noted that at 12:14 a.m., on July 24, 2021, a red sports utility vehicle (SUV) arrived and parked at the station's gas pumps. Approximately three minutes later, the Armada registered to Daljit KAUR at the Elk Grove Residence arrived on the opposite side of the gas pump. Investigators then observed six suspected undocumented noncitizens exit the Armada and enter the red SUV. These individuals were traveling with either no personal belongings or, at most, a backpack.

87.    At approximately 12:36 a.m., investigators observed the Armada return to the gas station and park at another gas pump. Within seconds, a grey Chrysler Pacifica minivan, bearing Washington license plate BWS4749, approached the opposite side of the gas pump. A male subject with a long grey beard, with a blue zip-up sweatshirt and grey sweatpants, can be seen exiting the driver's seat of the Armada. Based upon my review of

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the surveillance video, and my review of multiple photographs of GILL, I believe that the
2  driver of the Armada is GILL. GILL can then be seen speaking with the driver of the
3  minivan, and then appears to direct individuals to exit the Armada and enter the grey
4  minivan. Once again, each of the six individuals is observed to have very little personal
5  belongings. After a few minutes, both vehicles depart the area.

6      88.    Based upon registration checks, it was determined that the registered owner
7  of the grey minivan was EAN Holdings, which among other companies, is the parent
8  company of Enterprise Car Rental.

9      89.    According to records provided by Enterprise, the renter of the grey minivan,
10  a 2020 Chrysler Pacifica, bearing Washington license plate BWS4749, was Mayankkumar
11  PATEL with a listed address of 825 Eastern Avenue, Fall River, MA 02721. This vehicle
12  was rented on July 23, 2021, in Puyallup, WA, and returned on July 25, 2021, at Chicago
13  O'Hare International Airport. Importantly, Mayankkumar PATEL has been listed on
14  several other one-way rentals related to this investigation, and this organization is known
15  to use rental vehicles to transport undocumented noncitizens from the Seattle area to other
16  locations throughout the United States, including Chicago.

17      90.    According to an open-source search in Google Maps, the Lacey Residence is
18  approximately a seven-minute drive from the Shell gas station in Olympia, WA. Based on
19  the timeframe observed in the surveillance footage, I believe that after GILL dropped off
20  the first set of six individuals who left the area in a red SUV, GILL returned to the Lacey
21  Residence, where additional undocumented noncitizens were being staged. I believe that
22  GILL then returned to the same gas station with a second set of noncitizens being
23  smuggled, and these individuals were then further transported in the grey Chrysler minivan
24  that had been rented by Mayankkumar PATEL on July 23, 2021.

25      91.    Based upon a review of records provided by Uber, investigators know that
26  there were six split border trips involving Uber Accounts 2 and 3 between July 15, 2021,
27  and July 23, 2021. Each of these trips originated near the U.S. – Canada border in the early
28  morning hours, was split at the Radisson Sea-Tac, and then terminated at the same Lacey,

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

WA, parking lot—that is approximately 2.1 miles from the Lacey Residence. Investigators believe that some, or all, of these six Uber trips involved the initial transport and staging of undocumented noncitizens at the Lacey Residence, before further transport by the smuggling organization on July 24, 2021, as detailed above.

**E.  Surveillance of August 30, 2021, Smuggling Event Involving GILL**

92.     On August 30, 2021, at approximately 4:19 a.m., an Uber driver (hereinafter "Uber Driver 1") provided me with information relating to a fare ordered—with him—by Uber Account 2 that originated near the U.S. – Canada border. Uber Driver 1 advised me that the pickup for this fare occurred at approximately 4:31 a.m. Uber Driver 1 indicated that he was driving a dark colored Toyota Avalon (hereinafter "the Avalon").

93.     At approximately 6:30 a.m., agents observed the Avalon enter the parking lot of the Radisson Sea-Tac and drop off four individuals—three adult males and one adult female—all of whom appeared to be of Indian descent. The four individuals each had no more than a backpack in their possession.

94.     The Avalon departed the parking lot, and the four individuals continued waiting in front of the hotel for approximately ten minutes. At approximately 6:40 a.m., a silver Toyota Camry, bearing Washington license plate BZE2620, approached the hotel. Agents then observed all four individuals enter the silver Camry. Physical surveillance of the silver Camry was initiated as it left the hotel and continued southbound on Interstate 5.

95.     At approximately 7:18 a.m., agents observed the same four individuals exit the silver Camry in the same Lacey, WA, parking lot discussed throughout this affidavit.

96.     At approximately 7:24 a.m., the Armada was observed entering the McDonald's parking lot.

97.     Upon arriving at the McDonald's, the driver of the Armada exited the vehicle and agents observed the driver motioning to the four individuals to come towards him. SA Jason Montgomery identified the driver of the Armada as GILL based on a recent photograph that SA Montgomery had observed of GILL. SA Montgomery observed the four individuals walk to the Armada and begin to speak with GILL. The four individuals

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   then entered the Armada, and the vehicle departed with GILL driving. Agents continued

2   physical surveillance of the Armada until it was observed arriving at the Lacey Residence,

3   at approximately 7:30 a.m. Upon arriving, the garage door was opened, the Armada entered

4   the garage, and the garage door was closed immediately before agents observed any

5   passengers exiting the vehicle.

6       98.    Based upon a review of Uber records, investigators know that both legs of

7   this trip, *i.e.*, border area to Radisson Sea-Tac and Radisson Sea-Tac to the Lacey, WA

8   parking lot, were ordered by Uber Account 2.

9          **F.**    **Surveillance of September 22, 2021, Smuggling Event Involving GILL**

10       99.    On September 22, 2021, investigators received information from another

11   Uber driver (hereinafter "Uber Driver 2"), that at approximately 3:40 a.m., he picked up

12   four individuals from near the U.S. – Canada border. According to records provided by

13   Uber, subsequently reviewed by investigators, this trip was ordered by Uber Account 2.

14       100.    Based upon the information provided by Uber Driver 2, agents were able to

15   begin surveillance of this Uber trip on Interstate 5 in Skagit County, WA. Agents continued

16   surveillance of the vehicle, and at approximately 5:59 a.m., observed four individuals exit

17   the vehicle in the parking lot of the Radisson Sea-Tac. SSA James Healy observed that the

18   four individuals appeared to be of Indian descent. The four individuals walked from the

19   Radisson Sea-Tac parking lot to the Red Lion Hotel, directly next door.

20       101.    At approximately 6:11 a.m., a second vehicle, bearing Washington license

21   plate BRL6748, entered the Red Lion Hotel and picked up the four individuals. This

22   vehicle traveled southbound on Interstate 5 toward Olympia. At approximately 7:05 a.m.,

23   law enforcement observed the vehicle drop off the four individuals in front of a Safeway,

24   located at 4280 Martin Way E in Lacey, WA, *i.e.*, the same parking lot used by GILL for

25   the pick-up of suspected undocumented noncitizens on August 30, 2021.

26       102.    At approximately 7:07 a.m., agents observed the Armada driving around the

27   Safeway parking lot. Agents then observed the Armada approach the individuals and the

28   driver speak with them. All four individuals then entered the vehicle. Based on my

observations of the driver and my knowledge of GILL's appearance, I believe the driver of the Armada to be GILL. The Armada was observed arriving at the Lacey Residence at 7:15 a.m. Upon arriving, the garage door was opened, the Armada entered the garage, and the door was closed immediately before agents observed any passengers exiting the vehicle.

### G.    Use of Target Telephones by Subjects of Investigation

### Target Telephone 1 – Suspected Use by GILL in February 2022

103.    On February 11, 2022, an HSI Confidential Source (hereinafter "CS-1"),[22] engaged in text communications with a WhatsApp account with TT1 as the account number (hereinafter the "TT1 WhatsApp Account").[23] According to CS-1, this exchange was with GILL. CS-1 also indicates that he/she has communicated regularly with GILL via TT1 since at least 2019.

104.    According to CS-1, during the WhatsApp text exchange, CS-1 and GILL discussed federal taxes. GILL stated to CS-1 that GILL would pay less taxes if GILL generated, for other people, IRS Forms 1099—which I know to be used to report contractor expenses to the IRS. GILL informed CS-1 that if he/she knew someone that needed a loan,

---

[22] CS-1 is cooperating with HSI in the hopes of receiving immigration benefits for members of CS-1's family. CS-1 is also cooperating with HSI for potential prosecutorial consideration given his/her concern that he/she would be implicated in the illegal conduct targeted by this investigation. CS-1 has a personal relationship with GILL that could affect his/her objectivity and could provide a basis for CS-1 to not fully disclose all information relating to GILL. CS-1 does not have criminal history.
CS-1 has not previously been a confidential informant with HSI or any other law enforcement agency. CS-1 has provided background information on targets of this investigation and documents corroborating the information. The information provided by CS-1 has been corroborated through other means and has been shown to be reliable.

[23] Based upon my training and experience, I know that WhatsApp is an open-source messaging application available on both Android and iPhone smart phones, and Apple and Windows personal computers. I know that the account number for a WhatsApp account must be associated with a cellular telephone number. I also know that to log into a WhatsApp account from another digital device, *i.e.*, that is not associated with the telephone number for the WhatsApp account, a user must have access to the cellular telephone associated with the account for initial login on a new device.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

GILL could provide a Form 1099 to that individual to show that they had sufficient income for the loan. CS-1 indicated that he/she knew someone that could use such proof of income.

105.    GILL asked CS-1 to provide a name, address, and tax identification number for the 1099 that GILL would provide. CS-1 provided the requested information to GILL via the TT1 WhatsApp Account. CS-1 also provided GILL an e-mail address to which GILL should send the completed Form 1099.

106.    On February 17, 2022, at approximately 3:31 p.m., GILL sent CS-1, via the TT1 WhatsApp Account, an image of a 2021 Form 1099-NEC. The payer's information was listed as: ICON FREIGHT LOGISTICS; 2501 TOLBERT DR; TRACY, CA 95377; (510) 816-5642. According to records provided by the U.S. Department of Transportation, I know that the company president of Icon Freight Logistics is Major Singh, the brother of Daljit KAUR. The nonemployee compensation listed on the form was $84,912.00.[24]

107.    At 3:37 p.m., GILL sent a follow-up message, via the TT1 WhatsApp Account, in which GILL indicated that he would send the email requested by CS-1 when GILL got home.

108.    At 8:13 p.m., CS-1 received an email from iknaamtransport@gmail.com with a subject line of "GS wala 1099." This subject line is consistent with the full name listed in the Form 1099 that GILL had sent via the TT1 WhatsApp Account earlier in the day. The Form 1099-NEC was attached to the email, and the document was titled ICON FREIGHT LOGISTICS. The only text in the body of the email was, "Thank you Iknaam Transport Inc. Elk Grove, CA 95757 Ph. (510) 816-5642."

109.    According to a March 2021 Small Business Administration Paycheck Protection Program (PPP) loan submitted on behalf of Iknaam Transport Inc., I know that

---

[24] Based on record checks, it is believed that all names, addresses, and taxpayer identification numbers listed on the 1099-NEC are accurate. However, according to CS-1, in 2021, the listed recipient of the nonemployee compensation, G.S.W., did not provide services of any kind to Icon Freight Logistics.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 29

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Daljit KAUR is the owner of this business and is listed as the "CEO" of this company in
2   the PPP loan application.

3   **Target Telephone 3 – November 2021 Bond Package with Daljit KAUR**
4   **Support Letter Listing TT3 as KAUR's Telephone Number**

5   110.   On November 4, 2021, a bond packet was submitted, via email, by an
6   immigration attorney to ICE officers at the Northwest ICE Processing Center (NWIPC) in
7   Tacoma, WA. The bond packet related to V.S., an undocumented noncitizen who was
8   apprehended by the USBP on October 5, 2021. The bond packet included a letter of support
9   for V.S. which was purportedly authored and signed by Daljit KAUR. In the letter, KAUR
10  stated that her telephone number was TT3 and that she has had that phone number for the
11  last eight years.

12  **Target Telephone 4 – Use by GILL in Support of Target Offenses**

13  111.   According to records provided by AT&T as recently as February 1, 2022,
14  TT4 was activated on December 1, 2019. According to these records, the listed subscriber
15  for TT4 is "PREPAID CUSTOMER" with a user address "123 Your Street, Your Town,
16  GA 98022." Consistent with the above subscriber information, billing information
17  associated with TT4 indicates that the payment type is "prepaid." According to these
18  records, there has been no change in the subscriber of TT4 since it was activated in
19  December 2019.

20  112.   On or about December 14, 2021, CS-2 was told by a contact in India that
21  there were three recent arrivals from India in Toronto, Canada. Based upon this phone
22  conversation, and CS-2's prior involvement in the smuggling organization, CS-2
23  understood that these three individuals were seeking assistance with entry into the United
24  States without authorization. That same day, CS-2 and GILL, using TT4, discussed this
25  matter via recorded phone call.[25]

26
27  _____
    [25] According to CS-2, he/she has spoken to GILL using TT4 for at least two years and knows that
28  the user of TT4 is GILL based upon both phone conversations and face-to-face meetings.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 30

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

113. On December 18, 2021, at approximately 9:04 a.m., GILL, using a WhatsApp account with TT4 as the account number (hereinafter "the TT4 WhatsApp Account"), texted CS-2 the following in the Hindi language, "Hi Brother, send those Toronto people in" and "give them your new name."

114. On December 18, 2021, CS-2 contacted facilitators in India and indicated that the three individuals would be smuggled into the United States through British Columbia. The facilitators in India then booked flight reservations from Toronto to Vancouver on December 21, 2021, for these three individuals.

115. On December 19, 2021, at approximately 9:15 a.m., CS-2 texted, to the TT4 WhatsApp Account, pictures, names, phone numbers, and flight itinerary of the three individuals that were to be smuggled by GILL.

116. On December 21, 2021, Canada Border Services Agency (CBSA) officers in Toronto positively identified all three individuals at the time of check-in at the Toronto International Airport. Upon arrival, CBSA officers in Vancouver also positively identified all three individuals inside the domestic terminal at the Vancouver International Airport.

117. During the next month, numerous events occurred which resulted in these three people not being crossed into the United States, including flooding in northern Whatcom County, a week of snow in which areas in northern Whatcom County received a foot or more of snow, and the surveillance of suspected members of the smuggling organization in British Columbia during which members of the organization identified that they were under surveillance by law enforcement.

118. On January 25, 2022, GILL, at approximately 5:52 a.m., using the TT4 WhatsApp Account, texted CS-2 a photo of one the individual being smuggled by the organization, herein referred to as K.P. The photo of K.P. had an American flag digitally transposed over his shirt.

119. On January 25, 2022, GILL, at approximately 10:17 a.m., using the TT4 WhatsApp Account, called CS-2 and informed CS-2 that "two, two have come." GILL

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 31

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   further stated, "they have to take a flight," and "they can't stay in a hotel for so long." GILL

2   concluded, "with their luck they have arrived. It's their fate." This call was recorded.

3       120.   Later that afternoon, at approximately 2:53 p.m., using the TT4 WhatsApp

4   Account, GILL sent a screenshot to CS-2 of a January 25, 2022, flight reservation that had

5   been booked from Seattle, WA, to Nashville, TN. The name associated with the reservation

6   was K.P., *i.e.*, the name of the individual who GILL had sent the picture of earlier in the

7   day with an American flag digitally added to the photo. Based upon open-source record

8   checks, on January 25, 2022, Delta Flight 1037 departed from Sea-Tac Airport at 5:52 p.m.,

9   and arrived at Nashville International Airport at 11:40 p.m.

10       121.   Moreover, according to the records provided by Uber on March 4, 2022,

11   Uber Account 2, ordered an Uber trip that originated at the Century Motel at 3:43 p.m.,

12   and arrived at Sea-Tac Airport at 3:58 p.m., *i.e.*, approximately one-hour forty-five minutes

13   before the scheduled departure of Delta Flight 1037.

14       122.   On January 26, 2022, GILL, using the TT4 WhatsApp Account, texted CS-

15   2 a photo of another individual, J.C., also with an American flag digitally transposed over

16   his shirt. After receiving this photo, CS-2 called GILL, at the TT4 WhatsApp Account.

17   GILL informed CS-2 that, ". . . three have come. Two girls and this boy" (which in context,

18   investigators understand the reference to a "boy" to be a reference to J.C.). This call was

19   recorded.

20       123.   At 2:34 p.m., on January 26, 2022, again using the TT4 WhatsApp Account,

21   GILL sent a screenshot to CS-2 of a January 26, 2022, domestic flight reservation from

22   Seattle, WA, to Chicago, IL. The name associated with the reservation was J.C. Records

23   provided by Delta, confirm that J.C. was a passenger on Delta Flight 1116, that departed

24   from Sea-Tac Airport at 10:59 p.m., and arrived at Chicago O'Hare International Airport

25   at 4:19 a.m. the following day.

26       124.   Moreover, according to the records provided by Uber on March 4, 2022,

27   Uber Account 2, ordered an Uber trip that originated at the Century Motel at 6:24 p.m.,

28   and arrived at Sea-Tac Airport at 6:38 p.m. Of note, according to the itinerary sent by GILL

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 32

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  using the TT4 WhatsApp Account to CS-2, Delta Flight 1116 was scheduled to depart Sea-

2  Tac at 9:00 p.m., on January 26, 2022, but actual departure was not until 10:59 p.m.

3      125.    On January 28, 2022, I was notified by USBP Intelligence Agents that they

4  had apprehended two Indian citizens near the U.S. – Canada border, the previous night at

5  approximately 11:19 p.m. One of the two Indian citizens apprehended by USBP was

6  identified as H.C.

7      126.    On January 28, 2022, at 2:59 a.m., CS-2 provided me a screenshot of a text

8  message that had been sent to CS-2 from the TT4 WhatsApp Account on January 28, 2022,

9  at 12:42 a.m. The text message sent by the TT4 WhatsApp Account consisted of only the

10  name for H.C. and a thumbs down emoji. Based upon USBP's apprehension of H.C.

11  approximately one hour before the TT4 WhatsApp Account sent this message, I believe

12  this text message was GILL's way of notifying CS-2 that H.C. had been apprehended by

13  USBP.

14      127.    On January 29, 2022, GILL, using the TT4 WhatsApp Account, contacted

15  CS-2 and initially requested payment in the amount of $11,500 per person for the two

16  people (K.P. and J.C.) that the organization had successfully brought into the United States.

17  Upon request by CS-2, GILL reduced his fee to $11,000 per person, but indicated, "from

18  now on, make it eleven five hundred, because there are a lot of expenses." Later in the call,

19  GILL stated, "I have to get this money to Raj. He is in Canada." This call was recorded.

20      128.    On January 30, 2022, GILL, using the TT4 WhatsApp Account, contacted

21  CS-2 and informed him/her that GILL would send instructions on how to send the money

22  owed to GILL. This call was recorded.

23      129.    On February 2, 2022, GILL, using the TT4 WhatsApp Account, sent CS-2

24  the following name and address, "Dipak patel, 490 Broadway Street, Brandenburg ky

25  40108." In a follow-up message, using the TT4 WhatsApp Account, GILL asked CS-2 to

26  send the check in the mail to the above address and to send GILL a copy of the check,

27  along with the tracking number.

28

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 33

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

130.    On February 4, 2022, agents from HSI New York, acting in an undercover capacity, received payment of the $22,000 smuggling fee from an unknown male of Indian descent. HSI agents then obtained a cashier's check in the amount of $22,000 and sent the check via FedEx to the name and address that had been provided by GILL. As instructed, CS-2 sent GILL, via the TT4 WhatsApp Account, a picture of the check and the tracking number. GILL, using the TT4 WhatsApp Account, responded back with a praying hands emoji.

131.    On February 15, 2022, FedEx provided a single IP address relating to customer tracking—on February 5, 2022—of the $22,000 check that HSI had sent via FedEx to the address provided by GILL. Investigators determined that this IP address was associated with service provided by Alibaba.com. Based upon correspondence with Alibaba.com, investigators were advised that service of legal process for such requests must be made through Alibaba Cloud Computing, Ltd., in the People's Republic of China.

132.    On or about April 4, 2022, investigators received records from Citibank that show that the $22,000 check was deposited into a personal checking account at Meade County Bank in Brandenburg, Kentucky.

133.    According to records Meade County Bank records received on or about April 21, 2022, the $22,000 check was deposited into the personal checking account of Dipak Patel on February 7, 2022.

134.    While investigators did not locate a single corresponding outgoing transfer matching the $22,000 smuggling fee, agents did note the Patel made multiple transfers to a Robinhood[26] investment account in February and March 2022. Specifically, Patel made transfers to Robinhood of $5,000 on February 22, 2022, $5,000 on March 7, 2022, and a second transfer of $20,000—also on March 7, 2022. Investigators have requested, but not

---

[26] Based upon a review of its website available at https://robinhood.com/us/en/about-us/, last accessed on May 4, 2022, I know that Robinhood provides various investment and banking products to include stocks, EFTs, cryptocurrency, option trading, margin trading, and ATM card services.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 34

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  yet received, records relating to these transactions and the associated account(s) from

2  Robinhood.

3      **H.    Identification of Capital One Credit Card**

4      135.    On March 23, 2022, Capital One Bank (USA), N.A., provided records for

5  the credit card (hereinafter "the Capital One credit card") that had purchased airfare for

6  K.P.'s fight (Delta #1037) from Seattle to Nashville on January 25, 2022, and J.C.'s flight

7  (Delta #1116) from Seattle to Chicago on January 26, 2022. According to the records

8  provided by Capital One, the account holder for this credit card is "Jaipaul Singh."[27]

9  Additionally, the address of record for this account was listed as 10074 Dona Neely Way,

10 Elk Grove, CA, *i.e.*, the Elk Grove Residence, where GILL is suspected to reside.

11     136.    Capital One also provided the phone number listed on the account. An

12 administrative subpoena to Verizon revealed that the subscriber of the phone number listed

13 on this account is Daljit KAUR at the Elk Gove residence.

14     137.    Finally, Capital One also provided payment information for the credit card

15 account and it was determined that most payments were being paid from a Bank of America

16 checking account for Iknaam Transport, Inc. As previously noted, KAUR is listed as the

17 CEO of this company.

18     **I.    Use of Capital One Credit Card to Purchase Airfare for Noncitizens**

19         **Smuggled by the Organization**

20     138.    On December 23, 2021, at approximately 3:16 a.m., Uber Account 3 ordered

21 a ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-

22 splitting ride, also ordered by Uber Account 3, departed at 5:25 a.m. from the Radisson

23 Sea-Tac, and arrived at the Century Motel at 5:36 a.m. Later that evening, at approximately

24

25

26 [27] Investigators believe this name to be an alias of GILL. A Bank of America (BoA) account previously identified during this investigation also used the name of Jaipaul Singh. This bank
27 account, which was closed in October 2021, had an associated phone number of TT1 and an address of the Galt Residence. This BoA account was used to pay 10 of the 114 payments during
28 the requested time period on the Capital One credit card.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 35

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   9:26 p.m., Uber Account 5 was used to order a ride from the Century Motel to the Sea-Tac
2   Airport.

3       139.   On December 23, 2021, a United Airlines flight from Seattle, WA, to
4   Newark, NJ, was booked using the Capital One credit card account for two passengers. The
5   credit card statement listed the United Airlines ticket number and the passenger names
6   "PATEL/NIRAV B" and "PATEL/TUSHAR B."

7       140.   A review of the United Airlines passenger manifest for Flight 2345 with
8   service from Seattle, WA to Newark, NJ, showed two passengers listed as
9   "PATEL/TUSHAR B" and "PATEL/TUSHAR B." The manifest also revealed that the two
10  passengers did not have any checked bags. In my experience, and based upon the
11  investigation to date, individuals that are smuggled unlawfully into the United States do
12  not possess more than a small bag of personal belongings.

13      141.   On December 24, 2021, at approximately 2:53 a.m., Uber Account 5 ordered
14  a ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-
15  splitting ride, ordered by Uber Account 2, departed from the Radisson Sea-Tac at 5:01
16  a.m., and arrived at the Kent-Des Moines Park & Ride—which is located approximately
17  0.2 miles from the Century Motel—at 5:11 a.m. Later that afternoon, at approximately 3:02
18  p.m., Uber Account 2 ordered a ride from the Century Motel to the Sea-Tac Airport.

19      142.   On December 24, 2021, an Alaska Airlines flight from Seattle, WA, to
20  Chicago-O'Hare International Airport, was booked using the Capital One credit card
21  account for two passengers. The credit card statement listed the Alaska Airlines ticket
22  number and passenger names "PATEL/PARAS B" and "PATEL/AKSHAYKUMAR J."

23      143.   A review of the Alaska Airlines passenger manifest for Flight 26 with service
24  from Seattle, WA, to Chicago-O'Hare International Airport showed the passengers listed
25  as "PATEL, PARAS B" and "PATEL, AKSHAYKUMAR J."

26      144.   On February 2, 2022, at approximately 2:53 a.m., Uber Account 5 ordered a
27  ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-splitting
28  ride, ordered by Uber Account 3, departed from the Radisson Sea-Tac at 3:43 a.m., and

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 36

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    arrived at the Century Motel at 3:52 a.m. Later that evening, at approximately 9:07 p.m.,

2    Uber Account 2 ordered a ride from the Century Motel to the Sea-Tac Airport.

3         145.    On February 2, 2022, a United Airlines flight from Seattle, WA to Newark,

4    NJ was booked using the Capital One credit card account for two passengers. The credit

5    card statement listed the United Airlines ticket number and passenger names

6    "DARJI/KOMALBEN K" and "DARJI/KIRANKUMAR J."

7         146.    A review of the United Airlines passenger manifest for Flight 2680 with

8    service from Seattle, WA, to Newark, NJ, showed two passengers listed as

9    "DARJI/KIRANKUMARJ" and "DARJI/KOMALBENK." The manifest also revealed

10   that the two passengers did not have any checked bags.

11        147.    According to CBSA records, Komalben Kiranbhai Darji and Kirankumar

12   Jagdishbhai Darji, entered Canada at Pearson International Airport, Toronto, Canada, on

13   December 24, 2021. A search of U.S. law enforcement databases revealed that Kirankumar

14   Jagdishbhai Darji was refused a visitor visa to the United States in 2015. There is no record

15   of any lawful admission into the United States for either individual.

16        148.    On February 8, 2022, at approximately 11:51 p.m., Uber Account 5 ordered

17   a ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-

18   splitting ride, ordered by the Uber Account 3 on February 9, 2022, departed from the

19   Radisson Sea-Tac at 2:04 a.m., and arrived at the Century Motel at 2:13 a.m. Later that

20   evening, at approximately 9:28 p.m., Uber Account 2 ordered a ride from the Century

21   Motel to the Sea-Tac Airport.

22        149.    On February 9, 2022, an Alaska Airlines flight from Seattle, WA to Chicago-

23   O'Hare was booked using the Capital One credit card account for one passenger. The credit

24   card statement listed the Alaska Airlines ticket number and passenger name

25   "PATEL/DRASTIBEN B."

26        150.    A review of the Alaska Airlines passenger manifest for Flight 718 with

27   service from Seattle, WA, to Chicago-O'Hare International Airport, showed one passenger

28   listed as "PATEL, DRASTIBEN B."

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 37

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

151.     CBSA searched their records and found a match to this subject that entered Canada on a student visa to attend St. Clair College. The subject, Drashtiben Bhikhabhai PATEL, entered Canada through Montréal–Trudeau International Airport on October 29, 2021. CBSA confirmed with the college that the subject never enrolled for classes at this college. A review of various law enforcement databases indicate that this individual has never applied for permission to enter, nor been lawfully admitted into, the United States.

152.     During the period requested for the Capital One credit card records (December 10, 2020 – February 21, 2022), the account was used to purchase $12,400.38 in airfare. Significantly, none of the passenger names for any flights listed on the credit card statements showed the name of the credit card holder.

**J.      TT3 and TT4 Cell Site Tower Pings Near the Elk Grove Residence During Suspected Smuggling Events**

153.     On February 8, 2022, at approximately 11:51 p.m., Uber Account 5 ordered a ride from near the U.S. – Canada border to Sea-Tac Airport. This trip was split at Sea-Tac Airport and the second leg of the trip—ordered by Uber Account 3—arrived at the Century Motel at approximately 2:13 a.m.

154.     According to cell site search warrant returns provided by AT&T, at 11:05 p.m., on February 8, TT3 pinged off a cell tower approximately 2100 meters from the Elk Grove Residence. According to these same records, the next ping for TT3 occurred on February 9, 2022, at 7:43 a.m. This ping was off the same tower located approximately 2100 meters from the Elk Grove Residence.

155.     As noted above, on February 9, 2022, the Capital One credit card purchased Airfare for "PATEL/DRASTIBEN B" from Seattle, WA, to Chicago-O'Hare.

156.     On February 10, 2022, at approximately 11:44 p.m., Uber Account 3 ordered a ride from near the U.S. – Canada border to Kent, WA. On February 11, 2022, at approximately 2:03 a.m., Uber Account 2 ordered a ride from the previous drop-off location to the Century Motel. Just prior to the origination leg, at 11:07 p.m. on February

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 38

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10, 2022, TT3 pinged off a cell tower approximately 750 meters from the Elk Grove Residence.

157.    On February 11, 2022, at approximately 10:40 a.m., Uber Account 2 ordered a ride from near the Century Motel to the Sea-Tac Airport. Just prior to this trip, at 9:04 a.m., TT3 pinged off a cell tower approximately 2100 meters from the Elk Grove Residence.

158.    Of note, TT4 had two pings between 6:00 p.m. on February 10, 2022, and 6:00 p.m. on February 11, 2022. Those pings occurred at 6:52 p.m. on February 10, 2022, and at 1:02 a.m. on the morning of February 11, 2022. Both pings were off a cell tower located approximately 2100 meters from the Elk Grove Residence.

159.    On February 11, 2022, the Capital One credit card purchased Airfare for "CHAUDHAR I/KENIS" from Seattle, WA, to Chicago-O'Hare.

160.    On February 12, 2022, at approximately 4:06 a.m., Uber Account 3 ordered a ride from near the U.S. – Canada border that arrived at Sea-Tac Airport at approximately 6:21 a.m. At 6:39 a.m., Uber Account 5 ordered a trip that originated at the Radisson SeaTac and ended at the Century Motel at 6:50 a.m. According to AT&T records, at 6:18 a.m. TT3 pinged off a cell tower approximately 750 meters from the Elk Grove Residence.

161.    On February 12, 2022, at 1:28 a.m., TT4 pinged off a cell tower approximately 2100 meters from the Elk Grove Residence. The next ping for TT4 was at 10:27 a.m. This ping was off a cell tower located approximately 1700 meters from a residence owned by Daljit KAUR that is located at 13461 Marengo Road, Galt, CA, (hereinafter "the Galt Residence").

162.    On February 12, 2022, the Capital One credit card purchased Airfare for "BHAVSAR/RAJKUMAR S" from Seattle, WA, to Chicago-O'Hare.

163.    On March 1, 2022, at approximately 12:08 a.m., Uber Account 5 ordered a trip from near the U.S. – Canada border to Kent, WA. On February 28, 2022, at 11:37 p.m., TT3 pinged off a cell tower approximately 2100 meters from the Elk Grove Residence.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 39

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    **K.     March 29, 2022, Smuggling Event and Analysis of PR/TT Data for**
2    **WhatsApp Accounts Associated with TT1-TT4**

3    164.    On March 23, 2022, a court-authorized pen register / trap and trace (PR/TT)
4    was installed on the TT1-TT4 WhatsApp Accounts. As detailed below, a review of the
5    PR/TT data for these accounts showed a significant increase in call and text message
6    activity prior to, during, and after a USBP apprehension of the two Indian nationals on
7    March 29, 2022.

8    165.    On March 29, 2022, at approximately 10:28 p.m., Blaine Sector dispatch
9    notified Border Patrol agents of two individuals crossing unlawfully into the United States
10   from Canada near Lynden, WA. Agents immediately responded to the area, encountered
11   the two individuals, determined they were Indian nationals present in the United States
12   unlawfully, and placed them under arrest at approximately 10:32 p.m.

13   166.    Overall, from March 23, 2022, through March 30, 2022, there were 240 total
14   incoming and outgoing phone calls and 1,224 text messages involving the four WhatsApp
15   accounts. Nearly one-third of the phone calls occurred during a 24-hour period between
16   10:00 am on March 29, 2022, and 10:00 am on March 30, 2022.

17   167.    In the 24-hour period prior to and after the smuggling event, there were
18   thirty-two phone calls and 110 text messages exchanged between the TT4 WhatsApp
19   Account and a WhatsApp Account associated with (604) 418-8312—a previously
20   unidentified Canadian phone number. Significantly, there was no prior communication
21   between the two WhatsApp accounts between March 23, 2022, and the first observed
22   contact that occurred on March 29, 2022, at 11:56 a.m.

23   168.    Moreover, during this same 24-hour period (beginning on March 29, 2022,
24   at 10:00 a.m.) an additional nine phone calls and twenty-eight text messages were
25   exchanged between the TT4 WhatsApp Account and another WhatsApp Account
26   associated with (778) 848-8634—which also is a Canadian phone number. Again, as with
27   the WhatsApp Account associated with (604) 418-8312, there had been no communication
28   between the TT4 WhatsApp and this account in the week prior.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 40

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

169.   Finally, between 1:33 p.m. on March 29, 2022, and 9:33 a.m., on March 30, 2022, there was a significant increase in communication between the TT1 WhatsApp Account and a WhatsApp account associated with (604) 356-2505—yet another a Canadian phone number. Specifically, there were a total of eighteen phone calls and forty-five text messages took place between the TT1 WhatsApp account and the WhatsApp account associated with (604) 356-2505.[28]

### L.   Identification of New Cell Phone (TT6) Used by Jaspal Gill

170.   On March 30, 2022, at approximately 3:04 p.m., the user of the TT4 WhatsApp Account texted CS-2, "new nu. 2532982097," *i.e.*, the call number associated with TT6.

171.   On March 31, 2022, at approximately 9:50 a.m., CS-2 placed a WhatsApp call to the WhatsApp account with (253) 298-2097 as the account number (hereinafter the "TT6 WhatsApp Account"). The call was recorded and was approximately nine minutes in duration. During that call, CS-2 confirmed that the user of the TT6 WhatsApp Account was GILL.

172.   According to records provided by AT&T on March 31, 2022, TT6 was activated on March 30, 2022. According to these records, the listed subscriber for TT6 is "PREPAID CUSTOMER" with a user address "123 YOUR STREET, YOUR TOWN, GA 98409." The records further indicate that the account was opened on March 30, 2022, *i.e.*, the day after the U.S. Border Patrol apprehension noted above.

### M.   The Armada Returns to the Lacey Residence on March 31, 2022

173.   On March 31, 2022, at approximately 9:19 p.m., a vehicle similar to the Armada was observed, via remote video surveillance, arriving at and entering the garage of the Lacey Residence. Due to the time of day, investigators were unable to see the license

---

[28] It should be noted that while the TT2 and TT3 WhatsApp accounts had activity during the PR/TT period, no phone calls or text messages were made or received from either of these WhatsApp accounts on March 29, 2022, or March 30, 2022.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 41

plate and therefore could not confirm the vehicle registration. However, an individual matching GILL's general physical profile, *i.e.*, height and weight, was also observed exiting the driver's side of the Armada. Upon exiting the vehicle, this individual was then observed entering the Lacey Residence through a door in the garage.

174. On April 1, 2022, at approximately 3:19 p.m.—which was the next time a vehicle was observed exiting the garage of the Lacey Residence —I was able to positively identify the vehicle as the Armada that is registered to Daljit KAUR at the Elk Grove Residence.

175. On April 4, 2022, at approximately 9:50 a.m., an individual matching GILL's general physical profile, *i.e.,* height and weight, was observed leaving the Lacey Residence. This was the last time, the Armada, or the individual believed to be GILL, has been observed at the Lacey Residence.

176. Based upon recent physical and electronic surveillance, and discussed further herein, investigators believe that GILL has remained in California during the months of April and May 2022. Notwithstanding the fact that GILL has remained in California since early April 2022, investigators believe that on April 16 and April 22, 2022, the Lacey Residence was used by GILL to harbor noncitizens that had just been smuggled into the United States through the U.S. – Canada border in Whatcom County, WA.

**N.    March 28, 2022, Suspected Smuggling Activity Conducted from the Galt Residence**

177. Based on records provided by Uber, at approximately 3:12 p.m., on March 28, 2022, Uber Account 2 requested a ride from the Century Motel to the Sea-Tac Airport. Investigators did not locate a complimentary split-border trip from the area near the U.S. – Canada border to the Century Hotel, but given the patterns observed in this investigation— to include the near exclusive use of Uber Account 2 for smuggling activities—investigators believe that this trip involved the transportation of a noncitizen, or noncitizens, to Sea-Tac

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 42

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Airport for further transportation of the undocumented noncitizen(s) in furtherance of their
2  unlawful entry into the United States.

3      178.   In the records received from Uber on May 5, 2022, Uber provided GPS
4  coordinates—when that information had been captured by Uber servers—for the location
5  of a device associated with a specific Uber account. This information was provided
6  consistently for Uber Account 1, but no GPS location information was provided for Uber
7  Accounts 2, 3, or 5. Based upon discussions with Uber and my investigation in this case, I
8  know that if a digital device does not have location services enabled, Uber servers will not
9  register GPS information for a digital device. However, that device/account will still be
10  able to order an Uber trip.

11      179.   On March 28, 2022, at approximately 3:13 p.m., which corresponds to the
12  ride requested by Uber Account 2 described above, an application event for Uber Account
13  1—shown as "pickup_location_changed"—was registered with the GPS coordinates of
14  38.2671, -121.28209. An open-source search of those GPS coordinates revealed that the
15  location at those coordinates is the Galt Residence. From 3:13 p.m. until 3:27 p.m., Uber
16  was able to collect 242 additional lines of data, all registering slightly different GPS
17  coordinates, but consolidated in one cluster as shown below with the activity clearly
18  occurring at the Galt Residence.



AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 43

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

180.    A review of cell-site data provided by AT&T and Verizon place several of the devices, attributed to GILL throughout this investigation, near the Galt Residence at the time of this smuggling activity. Specifically, between 3:00 p.m. and 4:00 p.m. on March 28, 2022, TT1, TT3-TT5 pinged off cell-site towers that ranged from 2100 to 3700 meters from the Galt Residence. It should be noted, that there is a cell tower that is approximately 1750 meters from the Galt Residence, but the target phones did not ping off this closer tower during this time frame.

181.    Based upon the information by provided by Uber, coupled with the cell-site location information for TT1, TT3-TT5, I believe that GILL was at the Galt Residence when he ordered the suspected smuggling trip from the Century Motel to the Sea-Tac Airport via Uber Account 2.

**O.    Purchase of Uber Gift Cards in Galt, CA, on March 29, 2022, and Use of Uber Gift Cards During Smuggling Events on April 15 and 16, 2022**

182.    Based on records provided by Uber, at approximately 6:06 p.m., on March 29, 2022, a purchase of two Uber gift cards totaling $350 was made at a Rite Aid located at 10570 Twin Cities Road, Galt, CA (hereinafter "the Galt Rite Aid").[29]

183.    Based on cell-site records provided by AT&T, TT4 is the device that had timestamps/pings that registered around the time of this Uber gift card purchase. At 6:04 p.m., *i.e.,* two minutes before the purchase of the gift card in Galt, CA, TT4 pinged off a cell tower that was located approximately 1750 meters from the Galt Residence. After the purchase of these gift cards, TT4 continued to ping off cell towers (ranging from 1750 meters to 3700 meters) from the Galt Residence. Based on the pings of this device, I believe that GILL returned to the Galt Residence after purchasing these Uber gift cards at the Galt Rite Aid.

184.    The first gift card purchased in Galt, CA, on March 29, 2022, was redeemed by Uber Account 3 during a suspected smuggling event detailed below.

---

[29] The Galt Rite Aid is located approximately 2.1 miles from the Galt Residence.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 44

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

185.    On April 15, 2022, at 4:33 p.m., Uber Account 3 requested the first leg of a split trip ride, both ordered by Uber Account 3. This first leg originated from Cornwall Avenue in Bellingham, WA, at 4:34 p.m. and ended in Everett, WA, at 6:29 p.m. Based on location data from Uber, the location of the destination in Everett was a Kentucky Fried Chicken restaurant. The second leg of the split-trip, also ordered by Uber Account 3, departed just behind the same restaurant at 6:40 p.m. and arrived at the Century Motel in Kent, WA at 7:25 p.m.

186.    During the suspected smuggling event detailed above, four of the six phones were active and sending GPS location data.[30] From 4:33 p.m. until 7:25 p.m., *i.e.*, the approximate duration of this split trip, TT1, TT2, and TT6 each registered 11 pings, while TT3 registered 12 pings. Approximately 43 out of the 45 pings that occurred during that period registered within the radius (ranging from 719 meters to 2278 meters) of the Elk Grove Residence. The other two pings were within the greater Elk Grove area, but the indicated radius did not include the Elk Grove Residence. However, given the vast majority of these pings included the Elk Grove Residence within the given radius, investigators believe that GILL coordinated this April 15, 2022, suspected smuggling event from the Elk Grove Residence.

187.    The second gift card that was purchased on March 29, 2022, at the Galt Rite Aid was redeemed on April 16, 2022, at 1:31 a.m. by the user of Uber Account 3. This gift card redemption also corresponds to another suspected human smuggling event that occurred shortly thereafter.

188.    On April 16, 2022, at approximately 2:48 a.m., Uber Account 3 requested the first leg of a trip-splitting ride that originated from near the U.S. – Canada border. This

---

[30] On April 6, 2022, investigators obtained GPS ping warrants for TT1-TT6. MJ22-134(1)-(2) (W.D. Wash. April 6, 2022). Investigators began receiving GPS location from Verizon and AT&T on April 8, 2022.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 45

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  trip originated at 3:16 a.m., near 2855 Whitewood Drive in Custer[31] and arrived at Sea-Tac
2  Airport at 5:15 a.m. The second leg of the split-trip, ordered by Uber Account 1, departed
3  the Radisson Sea-Tac at 5:31 a.m. and at 6:21 a.m. arrived at 2727 Fiddleback Street NE,
4  Lacey, WA. This location is three houses away from the Lacey Residence.

5      189.    Based on remote video surveillance at the Lacey Residence, at 6:20 a.m., the
6  garage to the residence opened without any cars in the area. Less than a minute later, three
7  individuals, each appearing to be carrying a backpack, walked up to the residence, entered
8  the garage, and walked into the house. After a short time, the garage then closed behind
9  them.



20      190.    Later that evening, at approximately 8:37 p.m., a ride was ordered by Uber
21  Account 1 from 2801 Fiddleback St. NE in Lacey, WA, which is directly next door to the
22  Lacey Residence. This Uber trip arrived at Sea-Tac Airport at 9:25 p.m.

23      191.    Based on the remote video surveillance from the Lacey Residence, at 8:37
24  p.m., what appears to be the same three individuals that arrived earlier in the morning,

---

[31] As discussed later in this affidavit, this was the exact location of a ride ordered by Uber Account 3, in which three undocumented noncitizens were apprehended by U.S. Border Patrol agents on April 21, 2022,

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 46

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

emerged from the garage and stood outside until, within thirty seconds, a vehicle pulled up and the individuals entered the vehicle. Based on the time and vehicle described by Uber, I believe this to be the same trip, ordered by Uber Account 1, to the Sea-Tac Airport. Through my investigation, I believe these people to be undocumented noncitizens that GILL had smuggled into the United State and harbored at the Lacey Residence, before their additional transportation in furtherance of their unlawful entry into the United States.





192.    During the suspected smuggling event that occurred on April 16, 2022, four of the six phones were active and sending location data. From 1:31 a.m. until 6:25 a.m., *i.e.*, the duration of the split border trip, TT1, TT2, TT3 and TT6 each registered approximately 18-20 pings. All 79 pings that occurred during that period registered within the radius (ranging from 719 meters to 2278 meters) of the Elk Grove Residence. Due to the consistency of these pings, which included the Elk Grove Residence within the given

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 47

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  radius, investigators believe that GILL coordinated this April 16, 2022, smuggling event
2  from the Elk Grove Residence.

3    **P.    U.S. Border Patrol Apprehensions in Late April 2022, Analysis of GPS,**
4    **PRTT Data, Uber Data, and Video Surveillance of GILL**

5    193.    On or about Tuesday, April 19, 2022, CS-2, was contacted by GILL via the
6  TT6 WhatsApp Account. During this call, which was recorded, GILL asked CS-2 if "our
7  guy in Vancouver was available tomorrow." According to CS-2, GILL informed CS-2 that
8  GILL would need the person to drop people off two times in the same spot. GILL further
9  clarified that it would be three people each time. GILL told CS-2 that this was for
10 Wednesday [April 20, 2022]; however, Thursday was not confirmed due to possible bad
11 weather.[32]

12   194.    According to GPS location data provided by AT&T, the two pings that
13 occurred before and after the April 19, 2022, call via the TT6 WhatsApp Account indicate
14 that TT6 was in Galt, CA, at the time of time of the call. Specifically, the GPS ping prior
15 to the call placed TT6 within an 1881-meter radius that included the Galt Residence, and
16 the second ping placed TT6 within a 653-meter radius—which also included the Galt
17 Residence. According to GPS location provided by Verizon, TT1 was located within a
18 1164-meter radius prior to the call and a 1709-meter radius after the call—with the Galt
19 Residence being included within both of the respective radiuses.

20   195.    During this timeframe, TT2 and TT3 were pinging within a specific radius
21 that included the Elk Grove Residence. As such, I do not believe that GILL was in
22 possession of TT2 or TT3 at the time of the above WhatsApp call.

23   196.    Investigators were not receiving GPS location data for TT4 or TT5 during
24 the time of this call.

25

26
_____

27 [32] Due to the recency of the call, HSI has been unable to get this call professionally transcribed
28 prior to the writing of this affidavit. The details of this call are based solely on the information
   provided to me by CS-2.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 48

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**April 20-21, 2022, Smuggling Event**

197.   On April 20, 2022, Blaine Station Border Patrol Agents (BPAs) were performing line watch duties along the U.S. - Canada border. At approximately 9:13 p.m., Supervisory Border Patrol Agent (SBPA) Jonathan Oman and Executive Officer Artemio Mendoza (hereinafter referred to as sUAS[33] operators) began conducting sUAS operations scanning the border area for individuals unlawfully entering the United States from Canada.

198.   At 10:00 p.m., sUAS operators notified agents in the surrounding area that they had identified three individuals approximately 200 yards south of the U.S. – Canada border. The sUAS operators maintained visual of the three individuals until approximately 1:54 a.m., on April 21, 2022, when they terminated the flight due to battery issues. BPAs assigned to Blaine Station maintained positions in the surrounding area to prevent the individuals from leaving the area undetected.

199.   At approximately 3:15 a.m., BPA Joseph Escalante, who was operating a mobile surveillance capability (MSC) vehicle in the vicinity of Custer School Road and Haynie Road in Custer, WA, observed what appeared to be three individuals hiding in a ditch. This area is approximately 2.5 miles south of the U.S. – Canada border.

200.   At approximately 3:20 a.m., Border Patrol Agents responded to the area. SBPAs Naminder Bhumber and Keith Varga also responded to assist in the search. Upon arrival, agents discovered three males hiding in a ditch, at or near where they had been last seen by the MSC operator.

201.   All three individuals, later identified as G.S., R.D., and K.C., were unable to communicate in the English language. However, SBPA Bhumber was able to communicate with the three individuals in the Hindi language. SBPA Bhumber, speaking in the Hindi language, determined that all three individuals were citizens and nationals of India. Each

---

[33] uSAS are small, unmanned aircraft systems and commonly referred to as drones.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 49

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   acknowledged that they had unlawfully entered the United States by walking across the

2   border from Canada.

3       202.   After the apprehension of these three individuals, SBPA Varga encountered

4   a white sedan in the area. During a brief interaction with the driver, SBPA Varga learned

5   that the driver was an Uber driver looking for his fare. SBPA Varga learned that the

6   intended destination of the fare was Sea-Tac Airport. The Uber driver also informed SBPA

7   Varga that he had spoken to a male individual with a heavy Indian accent, but who spoke

8   near perfect English, that had called the Uber driver prior to the time that the driver had

9   arrived at the pick-up location.

10      203.   A review of the PR/TT data for TT3 revealed an outgoing call at 2:50 a.m.

11  to the phone number (360) 788-5114. Research into this number showed that it is a phone

12  number registered to Uber that appears to be a switchboard number that connects the caller

13  directly to the Uber driver of a respective fare.

14      204.   A review of GPS data for TT3 revealed that the pings that occurred on April

15  21, 2022, at 2:45 a.m. and 3:00 a.m., *i.e.*, immediately before and after this call, indicate

16  that TT3 was in the same location. According to information provided by AT&T, TT3 was

17  located within a 2278-meter radius that included the location of the Elk Grove Residence.

18  **Purchase of Uber Gift Cards at Elk Grove, CA, Walgreens on April 21, 2022**

19      205.   According to Uber records, on April 21, 2022, at 12:54 a.m., Uber gift cards

20  in the amount of $150 and $200 were purchased at a Walgreens in Elk Grove, CA.

21  According to these same records, these gift cards were credited to Uber Account 3 at 2:15

22  a.m. and 2:17 a.m. later that morning. Uber records further confirmed that at 2:59 a.m.,

23  Uber Account 3 ordered a fare with an origination near where the three noncitizens were

24  apprehended—as detailed above—with an intended destination of Sea-Tac Airport.

25  //

26  //

27  //

28

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 50

206.     On May 6, 2022, investigators obtained video surveillance from a Walgreens located at 7299 Laguna Blvd, Elk Grove, CA (hereinafter "the Elk Grove Walgreens"),[34] where the Uber gift cards that were redeemed to Uber Account 3 were purchased. According to that surveillance video,[35] an individual that investigators believe to be GILL based upon observed physical characteristics—to include height, weight, approximate age, and a distinctive beard that is several inches in length, mixed black and grey around the mouth, but almost completely grey where it terminates below the neckline, was observed purchasing the Uber gift cards. Based upon review of the video surveillance, the individual suspected to be GILL paid cash for the gift cards.



**April 20-21, 2022, Analysis of PR/TT Data for WhatsApp Accounts Associated with TT1-TT4**

207.     In the 24-hour period prior to, during, and after the April 20-21, 2022, smuggling event detailed above, there were seventeen phone calls and 44 text messages exchanged between the TT1 WhatsApp Account and a WhatsApp Account associated with (604) 356-2505, *i.e.*, a number previously observed during the March 29, 2022, suspected

---

[34] Based upon a review of an open-source mapping application, I know that this Walgreens is approximately 3.7 miles from the Elk Grove Residence.

[35] For reasons that are unknown to investigators, the timestamp on the Walgreens' surveillance video appears to be off (later) by one hour.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 51

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  smuggling event discussed above.

2      208.    Moreover, during this same 24-hour period (beginning on April 20, 2022, at

3  10:00 a.m.) an additional five phone calls and nineteen text messages were exchanged

4  between either the TT2 or TT4 WhatsApp Accounts and another WhatsApp Account

5  associated with (360) 201-6343. Importantly, there had been no communication between

6  the TT1-TT4 WhatsApp accounts and this account in the three days prior.

7      209.    Finally, during this 24-hour period, nearly a quarter of the calls and text

8  messages (29 and 102 respectively) involving the TT1-TT4 WhatsApp Accounts were with

9  a WhatsApp account that had a telephone number with the India country code, *i.e.*, +91-

10  6354972038. Significantly, there was no communication with this WhatsApp account in

11  the week prior to this smuggling event.

12      210.    Investigators believe that the observed increase in communications on the

13  day of the verified smuggling events relates to planning and coordination between GILL

14  and co-conspirators involved in the smuggling of the individuals into the United States.

15      **April 20, 2022, Smuggling Event GPS Locations**

16      211.    During the smuggling event that occurred on April 20 and 21, 2022, four of

17  the six phones were active and sending location data. TT1, TT2, TT3, and TT6 each

18  registered 28 pings from 9:00 p.m. on April 20, 2022, and 4:00 a.m., on April 21, 2022. As

19  detailed in the exhibit below, approximately 108 out of the 112 pings that occurred during

20  that period registered within the radius (ranging from 719 meters to 2500 meters) of the

21  Elk Grove Residence. The other four pings were within the greater Elk Grove area, but the

22  indicated radius did not include the Elk Grove Residence. However, given the

23  overwhelming majority of these pings included the Elk Grove Residence within the given

24  radius, coupled with the purchase of Uber gift cards at a Walgreens located near the Elk

25  Grove Residence, investigators believe that the GILL coordinated the April 20-21, 2022,

26  smuggling event from the Elk Grove Residence.

27

28

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 52

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



10074 Dona Neely Way, Elk Grove CA

**April 20-21, 2022, Smuggling Event Phone Seizures**

212.    After the arrests on April 21, 2022, I seized three cellular phones found by Border Patrol agents in the possession of the undocumented noncitizens during a search incident to arrest of the individuals. On May 4, 2022, U.S. Magistrate Judge Mary Alice Theiler issued a federal search warrant for those devices. On May 6, 2022, HSI Special Agent Matthew Kimmel conducted an extraction of the devices and produced a report that showed the contents of the devices.

213.    A review of the extraction report for TT3 shows that this device was in contact with an iPhone 13 (seized from G.S.), and Redmi cellular phone (seized from R.D.) at the time of G.S. and R.D's apprehension.

214.    A review of PR/TT data confirms the information found through the digital extraction of the devices. Specifically, the phone numbers associated with the iPhone 13 seized from G.S. are (253) 448-4902 (SIM) and (236) 558-3516 (WhatsApp). And the Redmi device had a WhatsApp account that had a telephone number with the India country code, *i.e.*, +91-7859829241. According to the PR/TT data, there were 15 voice calls and 18 text messages between TT3 and the iPhone 13 between 6:47 p.m. and 8:25 p.m. There were additional 11 voice calls and 26 messages between TT3 and the Redmi device between the hours of 6:49 p.m. and 12:59 a.m. (April 21, 2022). During the timeframe of

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 53

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   these phone calls, TT3 registered 28 pings, including 22 of which registered within the
2   radius (2278 meters) of the Elk Grove Residence.

3       215.   Also found on the iPhone 13, was the Life360 application, which
4   investigators believe GILL uses to track the location of the undocumented noncitizens as
5   they unlawfully enter the U.S., and ultimately to direct them to the location of the Uber
6   pick-up. A review of both the extraction report for G.S.'s iPhone 13, and the physical
7   device, shows a location for the user "G"[36] near the U.S. – Canada border. Two other
8   names, "Sen" and "Rajni," are shown as individuals in the Life360 family circle. However,
9   the locations of these individuals are unavailable. Due to their location not being available,
10  and through prior investigation in this case, I believe that the "Sen" and "Rajni" Life 360
11  profiles belong to those engaged in the smuggling of this group of individuals into the
12  United States.



---

[36] I believe that the individual in the Life360 circle identified as "G" is G.S., who was apprehended
by USBP on April 21, 2022.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 54

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

216.   In a recorded phone call between GILL and CS-2 on January 13, 2022, GILL refers to the app called "360." In this conversation, GILL discusses with CS-2 the need to delete the app, so "they[37] cannot see where these people came from." GILL further states, "They know where these people are f**king coming. One hundred percent." GILL goes on to say, "…they were caught by the Border Patrol. After that, when I was deleting the 360 app, I saw that they were going on a street and the speed limit was 45 miles per hour."

**April 22, 2022, Smuggling Event, Purchase of Uber Gift Cards at Walgreens in Elk Grove, CA, and Video Surveillance from the Lacey Residence**

217.   According to records obtained from Uber, gift cards in the amounts of $100, $200, and $200 were purchased at the Elk Grove Walgreens on April 22, 2022, at 2:14 a.m. According to Uber records, two of these gift cards were credited to Uber Account 2 at 3:26 a.m. and 3:27 a.m. later that morning. The third $200 gift card was credited to Uber Account 1 at 6:22 a.m. on April 22, 2022.

218.   On April 22, 2022, an individual that investigators believe to be GILL was observed on surveillance video at the Elk Grove Walgreens purchasing Uber gift cards. Based on the surveillance video, the individual suspected to be GILL paid cash for the gift cards.



---

[37] Based on my reading of the transcript of the recorded phone call, I believe that GILL is referring to Border Patrol agents when he uses the term "they."

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 55

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



219.   Investigators believe that the above-noted Uber gift card purchases relate to a split border trip involving Uber Accounts 1 and 2 on the morning of April 22, 2022. Specifically, at 5:18 a.m., a ride ordered by Uber Account 2 was picked up from Delta Line Road in Blaine, WA. This ride terminated at approximately 6:55 a.m. at 12952 4th Avenue W., Everett, WA, which is in close proximity to the Mariner Park & Ride and is a location where Uber trips have previously been split. At 7:06 a.m., a ride ordered by Uber Account 1 was picked up close to the location where the border leg ordered by Uber Account 2 had terminated. The second leg of the trip concluded at 8:21 a.m., approximately .2 miles from the Lacey Residence.

220.   At approximately 8:29 a.m., on April 22, 2022, based upon review of remote video surveillance, investigators know that the garage of the Lacey Residence opened. No vehicle was in sight at that time. A few seconds after the garage door opened, and as detailed in the below photo, unidentified individuals—each wearing a backpack—walked into the garage of the Lacey Residence. The individual that was in front of the group appeared to be talking on a cell phone as the group of four entered the garage of the Lacey Residence. At 8:31 a.m., the garage was closed with the four individuals still inside the garage.

//

//

//

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 56

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**April 22, 2022, Smuggling Event GPS Locations**

221.    During the suspected smuggling event detailed above, four of the six phones were active and sending location data. TT5 was not sending any location data during this timeframe, and TT4 was not sending data until investigators believe that it was turned on at approximately 6:31 a.m. Once TT4 began providing location information, the pings placed TT4 within a 2278-meter radius that included the Elk Grove Residence.

222.    On April 22, 2022, between 2:00 a.m. and 9:00 a.m., TT1, TT2, TT3, and TT6 each registered approximately 26-28 pings. As detailed in the exhibit below, approximately 117 out of the 119 pings registered within the radius (ranging from 402 meters to 2278 meters) of the Elk Grove Residence. Given all but two these pings included the Elk Grove Residence within the given radius, coupled with the purchase of Uber gift cards at a Walgreens located near the Elk Grove Residence, investigators believe that GILL coordinated the April 22, 2022, smuggling event from the Elk Grove Residence.



AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 57

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Purchase of Uber Gift Cards at Walgreens in Elk Grove, CA on April 24, 2022**

223.   According to records obtained from Uber, gift cards in the amounts of $100 and $200 were purchased at the Elk Grove Walgreens on April 24, 2022, at 12:32 a.m. According to Uber records, these gift cards were credited to Uber Account 2 at 1:56 a.m. and 1:57 a.m. later that morning.

224.   Though these two gift cards were credited to Uber Account 2, investigators did not locate a corresponding Uber trip ordered by Uber Account 2 on the morning of April 24, 2022. Rather, investigators located a trip that was ordered by Uber Account 3 that originated in Lynden, WA, at 2:43 a.m., and terminated in Kent, WA, at 5:08 a.m. The second trip-splitting leg of this suspected smuggling event is currently unknown.

225.   On April 24, 2022, an individual that investigators believe to be GILL was observed on surveillance footage at the Elk Grove Walgreens purchasing Uber gift cards. Based on the surveillance video, the individual suspected to be GILL paid cash for the gift cards.



**Communication between CS-2 and GILL on April 24, 2022**

226.   On April 24, 2022, at approximately 3:04 a.m., GILL sent two messages via the TT6 WhatsApp Account to CS-2 stating, "…please call in morning. Need cards to setup unbr [*sic*] account urgently (praying hands emoji)." According to GPS pings for TT6 at

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 58

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2:55 a.m. and 3:10 a.m., *i.e.*, the pings prior to and following this message, TT6 was located within a 2278-meter radius that included the Elk Grove Residence.

227.    Later that morning, at approximately 10:30 a.m., GILL placed a call to CS-2 via the TT6 WhatsApp Account. During this recorded conversation, GILL indicated that a few Uber accounts of his had been suspended.[38] GILL asked CS-2 to send him a credit card number to create an additional Uber account(s).[39] GILL offered to provide $1,000 USD in exchange for a credit card number and zip code. GILL indicated that no money would be charged to the account, but he needed the credit card number to get the account started. GILL indicated that once the account was created, he would load his gift cards to the account to pay for the trips. A GPS ping at 10:28 a.m., placed TT6 within a 538-meter radius that included the Galt Residence.

**Creation of New Uber Account**

228.    Based on records received from Uber on May 5, 2022, investigators learned that a new Uber Account—linked to Uber Account 1 by device—was created at approximately 2:48 a.m. on April 25, 2022. The account name was "dilw rai." Uber records also show that the GPS data associated with this rider account on the day of sign-up placed the user of the account at the Elk Grove Residence. This account has had one trip request that occurred on April 27, 2022; however, the trip was canceled by the rider and was not completed. According to Uber records, the trip was requested for the Seattle area, but GPS data placed the user of the Uber application at the Elk Grove Residence.

---

[38] On Friday, April 22, 2022, Uber advised me that they would be banning from their platform several of the Uber accounts involved in apparent smuggling activities. Due to the apparent use of their services in furtherance of human trafficking activities, Uber agreed to notify law enforcement of rides ordered by previously identified suspect accounts, as well as any new accounts believed to be created by GILL.

[39] According to the Uber website (https://help.uber.com/riders/article/how-do-i-create-an-uber-account--?nodeId=fdfc0273-f67e-4545-9885-f89d0ca0aacf), in addition to an email address and phone number, a credit or debit card is necessary to create a rider account.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 59

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**April 26, 2022, Smuggling Event**

229.    On April 26, 2022, at approximately 4:45 a.m., Uber notified me that a ride had been ordered for pick-up at 9436 Delta Line Road in Blaine, WA.[40] I immediately notified Blaine Sector Dispatch that I suspected that there may be undocumented noncitizens in the area of that address.[41] Based upon my notification, Border Patrol agents assigned to the Blaine Border Patrol Station responded to the area.

230.    Upon arriving at the reported location at approximately 5:08 a.m., SBPA Edward Payment and BPAs Dustin Mattson, David Serrato, Jared Ferree and Joseph Escalante observed four individuals appearing to conceal themselves in the brush near the road. Agents approached the four individuals and identified themselves as United States Border Patrol Agents. SBPA Payment questioned each of the individuals as to their citizenship. All four, later identified as S.P., J.P., R.P., and L.P., stated that they spoke limited English but understood the questioning. All stated that they were citizens and nationals of India and admitted to illegally entering the United States by walking across the border from Canada.

231.    At the Bellingham Border Patrol station in Ferndale, WA, the four individuals were fingerprinted, and photographs were taken and enrolled into Department of Homeland Security databases. Records checks revealed that L.P. had been ordered removed from the United States on July 24, 2019, and was returned to India on September 27, 2019. A search of the other individuals revealed no immigration history.

//

//

//

---

[40] Uber responded to an administrative subpoena on May 5, 2022, which indicated that the Uber account used on this occasion was under the name "jadip kumar". This account had recently been identified, but, to my knowledge, had only been used on one prior occasion during the second leg of a split trip with Uber Account 3 on October 27, 2021.

[41] This area is less than two miles east of the location that the three undocumented noncitizens were encountered on April 21, 2022, and less than two miles south of the U.S.- Canada border.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 60

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

232.    On April 26, 2022, L.P. [42] was interviewed by BPA-I Michael J. Owens and BPA-I Pasquale at the Bellingham Border Patrol Station. Agents advised L.P. the interview was being audio recorded. During the interview, L.P. admitted to being a citizen and national of India. L.P. stated that she illegally crossed into the United States from Canada on April 26, 2022. L.P. stated that she followed a man she was arrested with today because he had a cellphone and was receiving directions. L.P. stated that S.P. (who she referred to by S.P.'s first name) was on the phone and providing directions for where the group should go.

233.    On April 26, 2022, R.P. was interviewed by BPA-I Owens and BPA-I Pasquale at the Bellingham Border Patrol Station. Agents advised R.P. that the interview was being audio recorded. R.P. admitted to being a citizen and national of India. R.P. stated he illegally crossed into the United States from Canada on April 26, 2022. R. P. did not offer information on his smuggling arrangements or the details of his illegal entry into the United States.

234.    On April 26, 2022, J.P. was interviewed by BPA-I Owens and BPA-I Pasquale. Agents advised J.P. the interview was being audio recorded. J.P. admitted to being a citizen and national of India. J.P. stated she illegally crossed into the United States from Canada on April 26, 2022. J.P. stated she recently traveled to Canada and entered Canada as a student. J.P. did not offer more information regarding her smuggling arrangements or illegal entry into the United States.

235.    On April 26, 2022, S.P. was interviewed by BPA-I Owens and BPA-I Pasquale at the Bellingham Border Patrol Station. Agents advised S.P. that the interview was being audio recorded. S.P. admitted to being a citizen and national of India. S.P. stated he illegally crossed into the United States from Canada on April 26, 2022.

---

[42] During the interview with L.P., and the others that were apprehended on April 26, 2022, agents utilized a Gujarati interpreter from Interpreters and Translators, Inc.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 61

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

236.   Agents questioned S.P. as to why all the individuals in his group were following him into the United States. S.P. stated he took a phone from the other man in his group because this individual had trouble seeing. S.P. stated the phone was given to the group by an unknown person. S.P. stated he was receiving information on where to go via phone from an unknown man speaking Hindi. S.P. stated the unknown man did not discuss Border Patrol operations nor did this unknown person provide information about whether there would be transportation waiting for the group once they entered the United States.

237.   S.P. stated the unknown man was giving directions to the group via a Compass application found on the phone.[43] As an example, S.P. explained the unknown man would say, "walk north 160 degrees" or "walk south 120 degrees." S.P. stated that he was going to pay a fee of an unknown amount to an unknown individual after S.P. successfully entered to the United States.

**April 26, 2022, Analysis of PR/TT Data for WhatsApp Accounts Associated with TT1-TT4**

238.   In a 5-hour period (8:00 p.m. until 1:00 a.m.) prior to and during smuggling event, there were nine phone calls and 33 text messages exchanged between the TT3 WhatsApp Account and a WhatsApp Account associated with (587) 207-4323—a previously unidentified Canadian phone number. Significantly, there was no prior communication between the two WhatsApp accounts between March 24, 2022, and the first observed contact that occurred on April 25, 2022, at 8:07 p.m.

239.   Moreover, during a 12-hour period (6:00 p.m. on April 25, 2022, until 6:00 a.m. on April 26, 2022), an additional eighteen phone calls and sixty-one text messages were exchanged between either the TT2 or TT3 WhatsApp Account and another WhatsApp Account associated with (360) 201-6343, that investigators also suspect was involved in the April 20-21, 2022, smuggling event discussed above.

---

[43] Investigators believe that the unknown man referenced by S.P. was GILL and that he was guiding this group using the Life360 app.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 62

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

240.    Finally, during the same 12-hour period, nearly thirty percent of the calls and text messages (49 and 199 respectively) involving the TT1-TT4 WhatsApp Accounts were between TT3 and a WhatsApp account that had a telephone number with the India country code, *i.e.*, +91-9510084667. Significantly, there has been no record of any communication with this phone number at any point during this investigation.

**April 26, 2022, Smuggling Event and GPS Locations for TT1-TT6**

241.    During the smuggling event that occurred into the early morning hours of April 26, 2022, all six of the phones were active and sending location data. Each of the devices registered either 27 or 28 pings from 9:00 p.m., April 25, 2022, until 4:00 a.m., April 26, 2022. As detailed in the exhibit below, approximately 155 out of the 165 pings registered within the radius (ranging from 653 meters to 2507 meters) of the Elk Grove Residence. The other ten pings were located within the greater Elk Grove area, but the provided radius did not include the Elk Grove Residence. However, given that the vast majority of the location pings included the Elk Grove Residence within the specified radius, investigators believe that the GILL coordinated the April 26, 2022, smuggling event from the Elk Grove Residence.



**CBSA Records**

242.    According to CBSA records, S.P. arrived at the Toronto International Airport on April 15, 2022, on a study permit to attend Coast Mountain College in British Columbia, Canada.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 63

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

243.    According to CBSA records, J.P. arrived at the Toronto International Airport on April 15, 2022, on a study permit to attend Loyalist College in Ontario, Canada.

244.    According to CBSA records, R.P. arrived at the Toronto International Airport on April 21, 2022, on a study permit to attend Northern College of Applied Arts and Technology in Ontario, Canada.

245.    According to CBSA records, L.P. arrived at the Toronto International Airport on October 26, 2021, on a single-entry visa. L.P. was sponsored by a Canadian citizen spouse via an overseas application.

**Communication between CS-2 and GILL on April 26, 2022**

246.    At approximately 7:27 a.m., on April 26, 2022, *i.e.*, in the hours after the arrest of S.P., J.P., R.P., and L.P. by U.S. Border Patrol, GILL made an outgoing phone call to CS-2 via the TT6 WhatsApp Account. This phone call was recorded. GILL informed CS-2 that the police[44] understand his Uber scheme and that his four people were arrested. GILL stated that—similar to last week—he requested an Uber, it was subsequently cancelled, and then the people were arrested by Border Patrol agents.[45] GILL informed CS-2 that three people got through earlier in the morning since he used a different route. GILL further stated that he will have to do things differently and offered $1,500 per person to anyone willing to pick up the people after they successfully cross the border into the United States. GILL also told CS-2 that he has ten more people in Canada.

247.    GPS data for TT6 at 7:21 a.m., *i.e.*, immediately prior to the call, placed TT6 within a 2278-meter radius that included the Elk Grove Residence. However, the next three pings that occurred at 7:36 a.m., 7:51 a.m., and 8:06 a.m., all occurred in the same location, and the radius provided by AT&T did not include the Elk Grove Residence. However, at

_____

[44] This was later clarified in the phone call that by police, GILL meant Border Patrol.
[45] Investigators believe that GILL is referring to the April 21, 2022, apprehension of three Indian nationals discussed earlier in this affidavit.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 64

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8:21 a.m., location information placed TT6 within a 2278-meter radius, that included the Elk Grove Residence.

**April 27, 2022, Smuggling Event**

248.   On April 27, 2022, Blaine Station Border Patrol Agents (BPA) were performing line watch duties along the U.S. – Canada border in Blaine Border Patrol Station's area of responsibility. At approximately 11.00 p.m., Blaine Sector Dispatch notified agents of three male individuals walking along a fence line approximately 0.6 miles south of the United States – Canada border. This location is approximately two miles west of the Lynden, Washington Port of Entry.

249.   Blaine Sector Dispatch immediately located the individuals via a Remote Video Surveillance System (RVSS) camera in the above-mentioned area and notified responding Border Patrol Agents Joseph Escalante, David Serrato, and Dustin Mattson. Upon arrival of responding Agents, Blaine Sector Dispatch directed agents to the location of the individuals who were attempting to conceal themselves in a nearby tree line.

250.   The above-mentioned agents approached these individuals and identified themselves as United States Border Patrol Agents. BPA Escalante questioned each of the individuals as to their citizenship. All three, later identified as R.S., M.P., and D.P., stated that they spoke English and understood the questioning. Each subject stated that they were citizens and nationals of India and admitted to illegally entering the United States by walking across the border from Canada.

251.   They were then transported to Bellingham Border Patrol Station where all individuals were fingerprinted, and photographs were taken and enrolled into Department of Homeland Security databases. Records checks revealed no previous immigration history.

252.   On April 28, 2022, R.S. was interviewed by BPA-I Parminder Singh and BPA-I Leonardo Marroquin. Agents advised R.S. that the interview was being audio recorded. R.S. stated he was born and raised in Ahmedabad, Gujarat, India. R.S. stated that he departed India on April 23, 2022. R.S. stated that he entered Canada in Toronto, Ontario,

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 65

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

where he stayed at a hotel for one night (6 Cost Hotel). R.S. then traveled from Toronto to Vancouver via flight. He then stayed at a Ramada Hotel in Vancouver for two nights.

253.    R.S. then stated that the day of the crossing, an individual named Bunty, who R.S. described as a Sikh with a beard, picked up R.S. and the two other individuals that had been apprehended with him. R.S. stated that he had received the information for Bunty when he was in India from a family friend. R.S. stated he had no final destination in the United States.

254.    On April 28, 2022, M.P. was interviewed by BPA-I Singh and BPA-I Marroquin. Agents advised M.P. that the interview was being audio recorded. Patel stated that he was born and raised in Gandhinagar, Gujrat, India. M.P. said he departed Gujrat to Abu Dhabi Airport, on April 20, 2022, and ultimately entered Canada at Toronto International Airport. M.P. stated that he stayed at a hotel for two days. M.P. stated he got taxi service from the front desk at the Toronto hotel to go to Vancouver. M.P. stated that it took him a day and a half and cost $1,000 CDN to travel from Toronto to Vancouver via taxi. M.P. stated that he walked around downtown Vancouver until he found a house for rent for two nights, paying $200 per night. M.P. stated that he then walked from downtown Vancouver to the U.S. - Canada International border (approximately 38 miles) in two hours.

255.    After initial processing, Border Patrol agents attempted to conduct an interview with D.P. However, D.P. declined to answer questions relating to the circumstances of his unlawful entry into the United States.

**April 27, 2022, Smuggling Event GPS Locations for TT1-TT6**

256.    During the smuggling event that occurred on April 27, 2022, all six of the phones were active and sending location data. Each of the devices registered either 27 or 28 pings from 9:00 p.m., April 27, 2022, through 4:00 a.m., April 28, 2022. As detailed in the below exhibit, approximately 147 out of the 167 pings that occurred during that time registered within the radius (ranging from 719 meters to 2278 meters) of the Elk Grove Residence. The other pings are located within the greater Elk Grove area, but the location

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 66

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information provided by the respective provider(s) placed the device outside of the radius of the Elk Grove Residence. Based upon the investigation to date, to include the GPS data relating to TT1-TT6 as detailed in this paragraph, it is my belief that the April 27, 2022, smuggling event was coordinated out of the Elk Grove Residence.



**Q.    Identification of New Cell Phone (TT7) Used by GILL**

257.    On May 4, 2022, at approximately 9:08 p.m., CS-2 received the following text from a WhatsApp Account with (360) 778-9649 as the account number, "Bhai ji save this number please."

258.    On May 9, 2022, at approximately 10:47 a.m., CS-2 placed a WhatsApp call to the WhatsApp account with (360) 778-9649 as the account number (hereinafter the "TT7 WhatsApp Account"). The call was recorded and was approximately two minutes and forty-five seconds in duration. During that call, CS-2 confirmed that the user of the TT7 WhatsApp Account was GILL.

259.    According to records provided by AT&T on May 16, 2022, TT7 was activated on May 4, 2022. According to these records, the listed subscriber for TT7 is "PREPAID CUSTOMER" with a user address "123 YOUR STREET, YOUR TOWN, GA 98226." The records further indicate that the account was opened on May 4, 2022, *i.e.*, the day GILL texted CS-2 the new number.

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 67

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**R.     Recent Surveillance of GILL at the Elk Grove Residence and the Galt Residence**

260.    On May 3, 2022, HSI Sacramento SA Craig Squire conducted surveillance at the Elk Grove Residence. SA Squire arrived at approximately 4:15 p.m. and observed a silver Honda, bearing California license plate 8TQS309, parked in the driveway. SA Squire conducted record checks and this vehicle is registered to Daljit KAUR at the Elk Grove Residence.

261.    On May 4, 2022, SA Squire again conducted surveillance at the Elk Grove Residence. SA Squire arrived at approximately 9:30 a.m. and no vehicles were observed at the residence. At approximately 10:27 a.m., a beige-colored BMW sedan pulled into the driveway and proceeded through the gate to the garage which is in the rear. SA Squire drove by the Elk Grove Residence and observed that the BMW was parked in the garage with the door up. The vehicle had a personalized California license plate that began with "IL," however, the rest of the license plate was obscured.

262.    At approximately 12:48 p.m., the silver Honda seen the previous day pulled into the driveway. An unidentified male wearing a hooded sweatshirt exited the vehicle and entered the residence through the front door. At approximately 2:09 p.m. the BMW backed out of the driveway and drove out of SA Squire's view.

263.    At approximately 2:40 p.m., the BMW returned and parked in the garage. After the BMW parked, and after having not observed GILL at the Elk Grove Residence, SA Squire went to the Galt Residence. When SA Squire arrived at the Galt Residence, an updated phone ping showed that GILL was headed north toward the Elk Grove Residence. SA Squire then returned to the Elk Grove Residence. Upon arriving at the Elk Grove Residence at approximately 3:42 p.m., SA Squire observed the Armada now parked in the driveway.

264.    On May 10, 2022, HSI Sacramento SAs Craig Squire and Michael Barge drove by the Elk Grove Residence to take photographs of the residence. Upon arriving at the Elk Grove Residence, SAs Squire and Barge observed the Armada parked in the

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 68

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  driveway. As SA Squire and Barge were driving past the Elk Grove Residence, they

2  observed GILL walking through the courtyard, behind the gate, and headed toward the

3  main residence.

4      265.   On May 9, 2022, SA Squire drove to the Galt Residence to conduct

5  surveillance. SA Squire arrived at approximately 2:00 p.m. and parked in an area with a

6  view of the front gate of the residence.

7      266.   At approximately 2:15 p.m., SA Squire observed the Armada pull into the

8  driveway of the residence, enter through the gate, and park near the garage on the north

9  side of the Galt Residence. Before the vehicle turned south on Marengo Road, SA Squire

10 had a clear view of the driver and positively identified him as GILL based on recent photos

11 GILL that SA Squire had been provided. SA Squire observed GILL open the rear tailgate

12 of the Armada and make two trips carrying bags into the Galt Residence.

13          **KNOWLEDGE BASED ON TRAINING AND EXPEREINCE**

14     267.   Based on my training and experience, I know each cellular device has one or

15 more unique identifiers embedded inside it. Depending on the cellular network and the

16 device, the embedded unique identifiers for a cellular device could take several different

17 forms, including an Electronic Serial Number (ESN), a Mobile Electronic Identity Number

18 (MEIN), a Mobile Identification Number (MIN), a Subscriber Identity Module (SIM), a

19 Mobile  Subscriber  Integrated  Services  Digital  Network  Number  (MSISDN),  an

20 International Mobile Subscriber Identifier (IMSI), or an International Mobile Equipment

21 Identity (IMEI). The unique identifiers -- as transmitted from a cellular device to a cellular

22 antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular

23 device making the communication without revealing the communication's content.

24     268.   Based on my training and experience, I know that when a cell phone connects

25 to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular

26 antenna or tower, and the cellular antenna or tower records those identifiers as a matter of

27 course. The unique identifiers -- as transmitted from a cell phone to a cellular antenna or

28 tower -- are like the telephone number of an incoming call. They can be recorded by pen-

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 69

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

269.   Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

270.   Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

271.   In my training and experience, I have learned that AT&T and Verizon are companies that provide cellular telephone access to the general public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (*i.e.,* antenna towers covering specific

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 70

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  geographic areas) that received a radio signal from the cellular telephone and, in some
2  cases, the "sector" (*i.e.,* faces of the towers) to which the telephone connected. These
3  towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles
4  apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily
5  serve every call made to or from that device. Accordingly, cell-site data is typically less
6  precise that E-911 Phase II data.

7       272.   Based on my training and experience, I know that AT&T and Verizon can
8  collect E-911 Phase II data about the location of the Target Telephones, including by
9  initiating a signal to determine the location of the Target Telephones on their networks or
10  with such other reference points as may be reasonably available.

11       273.   When using a cellular connection to receive or transmit data, a cellular phone
12  typically utilizes a cell tower to make telephone calls, send or receive text messages, send
13  or receive emails, surf the internet, carry out application-initiated data transfers, among
14  other things.

15       274.   Based on my training and experience, I know that AT&T and Verizon can
16  collect cell-site data about Target Telephones. Based on my training and experience, I
17  know that for each communication (including data connections) a cellular device makes,
18  its wireless service provider can typically determine: (1) the date and time of the
19  communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the
20  customer connected at the beginning of the communication; (4) the cell tower to which the
21  customer connected at the end of the communication; and (5) the duration of the
22  communication. I also know that wireless providers such as AT&T and Verizon typically
23  collect and retain cell-site data pertaining to cellular devices to which they provide service
24  in their normal course of business in order to use this information for various business-
25  related purposes.

26       275.   Different service providers use different systems, applications, and reports to
27  collect or analyze cell site data. These systems, applications, and reports are referred to by
28  a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 71

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Location Database of Record or "LOCDBOR" (AT&T), EVDO, ALULTE, Timing Advance and True Call (T-Mobile/Sprint/US Cellular/GCI). RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

276.    Based on my training and experience, I know that wireless providers such as AT&T and Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as AT&T and Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephone's user or users and may assist in the identification of co-conspirators and/or victims.

277.    Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone. These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone. To provide for any such changes made to the Target Telephones, Attachments A1-A2 specify that the property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 72

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or
2  that was bearing the same unique identifying number as the telephone number listed above,
3  at any point within the last 30 days, (iii) any changed unique identifying number
4  subsequently assigned to the same telephone number, or (iv) any additional changed
5  telephone number and/or unique identifying number, whether the changes occur
6  consecutively or simultaneously, listed to the same subscriber and wireless telephone
7  account number as the telephone numbers listed above, within the period of disclosure
8  authorized by this warrant.

9  **AUTHORIZATION REQUEST FOR TARGET TELEPHONES**

10  278.  Based on the fact set forth in this affidavit, there is probable cause to
11  conclude that violations of 8 U.S.C. §§ 1324(a)(1)(A)(i)-(iii), (v)(I) and (a)(2)(B)(ii),
12  Bringing in and Harboring Certain Aliens, and Conspiracy to commit such offenses, and
13  18 U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary
14  Instruments, have been committed, are being committed, and will be committed by users
15  of the target telephone(s) and others who are known and unknown. The requested
16  information, including prospective location information, for the target telephone(s) will
17  help law enforcement monitor the user(s) of the target telephone(s), follow their
18  movements when they are at locations that are otherwise hard for law enforcement to
19  observe, and identify other coconspirators, sources of supply, storage locations, and other
20  people and places of evidentiary value. There is probable cause to believe that the use of
21  the investigative technique described by the warrant will result in officers learning that
22  identifying information.

23  279.  Based on the foregoing, I request that the Court issue the proposed search
24  warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25  280.  I further request that the Court direct AT&T and Verizon to disclose to the
26  government any information described in Attachments B1-B2 that is within the possession,
27  custody, or control of AT&T and Verizon. I also request that the Court direct AT&T and
28  Verizon to furnish the government all information, facilities, and technical assistance

AFFIDAVIT OF SA DAVID J. SPITZER
USAO #2018R00962 - 73

1  necessary to accomplish the collection of the information described in Attachments B1-B2
2  unobtrusively and with a minimum of interference with AT&T or Verizon's services,
3  including by initiating a signal to determine the location of the Target Telephone(s) on
4  AT&T or Verizon's network or with such other reference points as may be reasonably
5  available, and at such intervals and times directed by the government. The agency shall
6  reasonably compensate AT&T and Verizon for reasonable expenses incurred in furnishing
7  such facilities or assistance.

8      281.   Pursuant to 18 U.S.C. § 2703(g), the government will execute these warrants
9  by serving the warrants on AT&T or Verizon. Because the warrants will be served on
10  AT&T or Verizon, who will then compile the requested records and data, reasonable cause
11  exists to permit the execution of the requested warrant at any time in the day or night. I
12  therefore request that the Court authorize execution of the warrant at any time of day or
13  night, owing to the potential need to locate the Target Telephone(s) outside of daytime
14  hours.

15      282.   This warrant is being submitted via reliable electronic means. Fed. R. Crim.
16  P. 4.1 & 41(d)(3).

17
18
19                          DAVID J. SPITZER
20                          Special Agent,
                            Homeland Security Investigations
21

22      The above-named agent provided a sworn statement to the truth of the foregoing
23  affidavit by telephone on this 20th day of May, 2022.

24
25
26                          HON. BRIAN A. TSUCHIDA
27                          United States Magistrate Judge
28

1

**ATTACHMENT A1**

2

**Property to Be Searched and Subscriber/Subject Information**

3       1.      Records and information associated with the cellular phone assigned call

4    number:

5              a.      (916) 616-2319 (hereinafter "**Target Telephone 1"** or "**TT1")**. **TT1**

6    is a cellular telephone with International Mobile Subscriber Identity (IMSI)

7    311480380560254, with subscriber "Info Update," at 295 Parkshore Drive, Folsom, CA,

8    with service provided by Verizon, a wireless telephone service provider headquartered at

9    180 Washington Valley Road, Bedminster, NJ 07921.

10          The subscriber/customer of the Target Cell Phone is unknown. The identity of the

11   person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal

12   SINGH.

13          2.      The Target Cell Phone (**TT1**).

14          3.      The property to be searched includes: (i) any instrument to which the listed

15   target telephone number was assigned within the last 30 days, and that now has been

16   assigned a changed telephone number, (ii) any changed telephone number assigned to an

17   instrument now bearing the same unique identifying number (such as an IMSI, ESN,

18   MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique

19   identifying number as the telephone number listed above, at any point within the last 30

20   days, (iii) any changed unique identifying number subsequently assigned to the same

21   telephone number, or (iv) any additional changed telephone number and/or unique

22   identifying number, whether the changes occur consecutively or simultaneously, listed to

23   the same subscriber and wireless telephone account number as the telephone numbers listed

24   above, within the period of disclosure authorized by this warrant.

25

26

27

28

ATTACHMENT A1 - 1
USAO# 2018R00962

## ATTACHMENT B1

### Particular Things to be Seized

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure and the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701. As such, this warrant authorizes the collection of subscriber records, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phones. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

I. <u>**Section I: Information to be Disclosed by Verizon**</u>

1.     **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A1:

       a.     Names (including subscriber names, user names, and screen names);

       b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

       c.     Local and long distance telephone connection records from **April 1, 2022, through May 20, 2022**;

       d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol (IP) addresses) associated with those sessions from **April 1, 2022, through May 20, 2022**;

       e.     Length of service (including start date) and types of service utilized;

       f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers (ESN), Mobile Electronic Identity Numbers (MEIN), Mobile Equipment Identifiers (MEID), Mobile Identification Numbers (MIN), Subscriber Identity Modules (SIM), Mobile Subscriber Integrated Services Digital Network Numbers

ATTACHMENT B1 - 1
USAO# 2018R00962

1  (MSISDN), International Mobile Subscriber Identity Identifiers (IMSI), or International

2  Mobile Equipment Identities (IMEI);

3          g.    Other subscriber numbers or identities (including the registration

4  Internet Protocol (IP) address); and

5          h.    Means and source of payment for such service (including any credit

6  card or bank account number) and billing records.

7        2.    **Historical Cell Site Location Information**.

8          a.    All records and other information (**not including the contents of**

9  **communications**) relating to wire and electronic communications sent or received by the

10  Account from **April 1, 2022, through May 20, 2022**, including:

11          i.    the date and time of the communication, the method of the

12  communication, and the source and destination of the communication (such as the source

13  and destination telephone numbers (call detail records), email addresses, and IP addresses);

14          ii.    historical cell site information regarding the cell tower and

15  antenna face (also known as "sectors") through which the communications were sent and

16  received. This information is to be provided irrespective of the application, name, or report

17  utilized by Verizon. Accordingly, this information includes the following data sets to the

18  extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO, True

19  Call, ALULTE, and Timing Advance.

20          b.    The physical address and coverage maps of cell towers used by the

21  Target Cell Phone(s).

22        3.    **Prospective Cell Site Location Information.**

23          a.    All information about the location of the Target Cell Phone(s)

24  described in Attachment A1 for **a period of 45 days**, during all times of day and night.

25  This information includes: precise location information, as well as all data about which

26  "cell towers" (*i.e.,* antenna towers covering specific geographic areas) and "sectors" (*i.e.,*

27  faces of the towers) received a radio signal from the cellular telephone(s) or account(s)

28  described in Attachment A1. This information also includes the following data sets to the

ATTACHMENT B1 - 2
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO, True

2   Call, ALULTE, and Timing Advance.

3          b.     The physical address and coverage maps of cell towers used by the

4   Target Cell Phone(s).

5        4.     **Prospective E-911/GPS and Cell Site Triangulation Information.**

6          a.     All information about the location of the Target Cell Phone(s)

7   described in Attachment A1 for **a period of 45 days**, during all times of day and night.

8   This information includes: all available E-911 Phase II data, GPS data, latitude-longitude

9   data, and other precise location information, as well as all data about which "cell towers"

10   (*i.e.,* antenna towers covering specific geographic areas) and "sectors" (*i.e.,* faces of the

11   towers) received a radio signal from the cellular telephone(s) or account(s) described in

12   Attachment A1.

13          b.     The physical address and coverage maps of cell towers used by the

14   Target Cell Phone(s).

15      To the extent that the location information described in the previous paragraphs

16   (hereinafter, "Location Information") is within the possession, custody, or control of

17   Verizon, Verizon is required to disclose the Location Information to the government

18   pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b),

19   Verizon must furnish the government all information, facilities, and technical assistance

20   necessary to accomplish the collection of the Location Information unobtrusively and with

21   a minimum of interference with Verizon's services. The government shall compensate

22   Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

23   **II.   Section II: Information to Be Seized by the Government**

24      1.     All information described above in Section I that constitutes evidence of

25   violations of 8 U.S.C. §§ 1324(a)(1)(A)(i)-(iii) and (a)(2)(B)(ii), Alien Smuggling, and 18

26   U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary

27   Instruments involving Jaspal GILL, aka, Rajinder SINGH, and/or previously unidentified

28   subject(s).

ATTACHMENT B1 - 3
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  2.  All non-content subscriber/account information provided pursuant to 18

2 U.S.C. § 2703(c).

3  3.  Location Information regarding the Target Cell Phone(s).

4  Law enforcement personnel (who may include, in addition to law enforcement

5 officers and agents, attorneys for the government, attorney support staff, agency personnel

6 assisting the government in this investigation, and outside technical experts under

7 government control) are authorized to review the records produced by Verizon in order to

8 locate the things particularly described in this Warrant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B1 - 4
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A2**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the cellular phone assigned call number:

a.      (253) 750-1721 (hereinafter "**Target Telephone 4**" or "**TT4**"). **TT4** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410206907647, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 98022, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

The subscriber/customer of the Target Cell Phone is unknown. The identity of the person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal SINGH.

b.      (360) 778-9649 (hereinafter "Target Telephone 7" or "TT7"). TT7 is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410370678979, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 98409, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

The subscriber/customer of the Target Cell Phone is unknown. The identity of the person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal SINGH.

1.      The Target Cell Phones (**TT4, TT7**).

2.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same

ATTACHMENT A2 - 1
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

ATTACHMENT A2 - 2
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B2

### Particular Things to be Seized

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure and the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701. As such, this warrant authorizes the collection of subscriber records, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phones. This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8). Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. See 18 U.S.C. § 3103a(b)(2).

**I.    Section I: Information to be Disclosed by AT&T**

1.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A2:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long distance telephone connection records from **April 1, 2022, through May 20, 2022**;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol (IP) addresses) associated with those sessions from **April 1, 2022, through May 20, 2022**;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers (ESN), Mobile Electronic Identity Numbers (MEIN), Mobile Equipment Identifiers (MEID), Mobile Identification Numbers (MIN), Subscriber Identity Modules (SIM), Mobile Subscriber Integrated Services Digital Network Numbers

ATTACHMENT B2 - 1
USAO# 2018R00962

1  (MSISDN), International Mobile Subscriber Identity Identifiers (IMSI), or International
2  Mobile Equipment Identities (IMEI);

3         g.    Other subscriber numbers or identities (including the registration
4  Internet Protocol (IP) address); and

5         h.    Means and source of payment for such service (including any credit
6  card or bank account number) and billing records.

7      2.    **Historical Cell Site Location Information**.

8         a.    All records and other information (**<u>not</u> including the contents of**
9  **communications**) relating to wire and electronic communications sent or received by the
10  Account from **April 1, 2022, through May 20, 2022**, including:

11         i.    the date and time of the communication, the method of the
12  communication, and the source and destination of the communication (such as the source
13  and destination telephone numbers (call detail records), email addresses, and IP addresses);

14         ii.    historical cell site information regarding the cell tower and
15  antenna face (also known as "sectors") through which the communications were sent and
16  received. This information is to be provided irrespective of the application, name, or report
17  utilized by AT&T. Accordingly, this information includes the following data sets to the
18  extent that they are collected by AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True
19  Call, ALULTE, and Timing Advance.

20         b.    The physical address and coverage maps of cell towers used by the
21  Target Cell Phone(s).

22      3.    **Prospective Cell Site Location Information.**

23         a.    All information about the location of the Target Cell Phone(s)
24  described in Attachment A2 for **<u>a period of 45 days</u>**, during all times of day and night.
25  This information includes: precise location information, as well as all data about which
26  "cell towers" (*i.e.,* antenna towers covering specific geographic areas) and "sectors" (*i.e.,*
27  faces of the towers) received a radio signal from the cellular telephone(s) or account(s)
28  described in Attachment A2. This information also includes the following data sets to the

ATTACHMENT B2 - 2
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  extent that they are collected by AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True
2  Call, ALULTE, and Timing Advance.

3        b.      The physical address and coverage maps of cell towers used by the
4  Target Cell Phone(s).

5        4.      **Prospective E-911/GPS and Cell Site Triangulation Information.**

6        a.      All information about the location of the Target Cell Phone(s)
7  described in Attachment A2 for **a period of 45 days**, during all times of day and night.
8  This information includes: all available E-911 Phase II data, GPS data, latitude-longitude
9  data, and other precise location information, as well as all data about which "cell towers"
10 (*i.e.,* antenna towers covering specific geographic areas) and "sectors" (*i.e.,* faces of the
11 towers) received a radio signal from the cellular telephone(s) or account(s) described in
12 Attachment A2.

13       b.      The physical address and coverage maps of cell towers used by the
14 Target Cell Phone(s).

15       To the extent that the location information described in the previous paragraphs
16 (hereinafter, "Location Information") is within the possession, custody, or control of
17 AT&T, AT&T is required to disclose the Location Information to the government pursuant
18 to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), AT&T
19 must furnish the government all information, facilities, and technical assistance necessary
20 to accomplish the collection of the Location Information unobtrusively and with a
21 minimum of interference with AT&T's services. The government shall compensate AT&T
22 for reasonable expenses incurred in furnishing such facilities or assistance.

23 **II.    Section II: Information to Be Seized by the Government**

24       1.      All information described above in Section I that constitutes evidence of
25 violations of 8 U.S.C. §§ 1324(a)(1)(A)(i)-(iii) and (a)(2)(B)(ii), Alien Smuggling, and 18
26 U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary
27 Instruments involving Jaspal GILL, aka, Rajinder SINGH, and/or previously unidentified
28 subject(s).

ATTACHMENT B2 - 3
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          2.        All non-content subscriber/account information provided pursuant to 18

2   U.S.C. § 2703(c).

3          3.        Location Information regarding the Target Cell Phone(s).

4          Law enforcement personnel (who may include, in addition to law enforcement

5   officers and agents, attorneys for the government, attorney support staff, agency personnel

6   assisting the government in this investigation, and outside technical experts under

7   government control) are authorized to review the records produced by AT&T in order to

8   locate the things particularly described in this Warrant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B2 - 4
USAO# 2018R00962